Salladay vs. The Town of Dodgeville.

SALLADAY. Respondent, vs. THE TOWN OF DODGEVILLE, Appellant.

*May 5 — May 23, 1893.*

(1-5) *Highways: Injury from defect or insufficiency: Evidence: Instructions to jury.* (6, 7) *Pregnancy occurring after injury and retarding recovery: Reduction of damages: Negligence: Court and jury.*

1. The notice of an injury from a defective highway, describing the place of the accident as on a certain road "about 100 yards east of the residence of Mrs. F., and somewhere near the line of sections 28 and 29," etc., and the insufficiency which caused the injury, as being "the general bad condition of the said highway, and also some loose stones lying in the traveled track," is *held* sufficient, although the injury was in fact caused, not by loose stones, but by a stone partly imbedded in the road.

2. The accident having occurred on July 11, evidence as to the condition of the road two weeks later, and also during the spring and summer of that year, was admissible, it being shown that its condition remained practically unchanged during all that time.

3. The defendant town having attempted to show that there had been no change in the condition of the road down to the time of the trial, and the jury having viewed or being about to view the place, it was competent for plaintiff to show in rebuttal that some months after the accident, and before the trial, earth had been plowed up on the sides of the road and thrown in upon the track.

4. The undisputed testimony showing that there was a stone or stones in the traveled track, it was not error for the court to state to the jury that there was no question that there was a stone there, leaving to them the question of its size, character, and location, and whether it constituted a defect which caused the injury.

5. The jury having returned into court and asked that the testimony of certain witnesses be read to them, the testimony of one of such witnesses was read and the court stated the substance of the testimony of the others. *Held,* not error, it being a matter within the discretion of the judge how much and what parts of the evidence shall be stated anew or read to the jury under such circumstances.

6. The mere fact that a married woman became pregnant some weeks after sustaining an injury, when no caution had been given in this respect by her medical adviser, is not necessarily and as a matter of law sufficient ground to justify a reduction of damages for the in-

Salladay vs. The Town of Dodgeville.

jury, although the results of the injury may have been thereby prolonged or her recovery retarded. Whether she was guilty of negligence was a question for the jury.

7. Whether an act is or is not negligence is a question for the jury if different minds may properly draw different inferences, even from the same established facts.

APPEAL from the Circuit Court for *Iowa* County.

Action to recover damages for injuries sustained July 11, 1891, by the plaintiff while traveling on a certain highway of the defendant town, alleged to be insufficient and out of repair, in that at the point in question it was in a "general bad condition, and some loose stones were lying in the traveled track of the said highway, which passes the Floyd school-house in said town, at a point therein about one hundred yards east of the residence of Mrs. Freeman, and somewhere near the line of sections twenty and twenty-nine, town seven north, range three east, in the county of Iowa, and in said town." The complaint alleged that while lawfully traveling along said highway, exercising ordinary care and without fault or negligence on her part, she was thrown violently out of the carriage in which she was riding upon the ground, and was thereby severely and permanently injured and disabled; that her head was badly bruised and she received great injury to her spine, from which she suffered and still suffers great pain, whereby she was permanently injured and disabled; and alleged the giving within the specified time of notice to one of the supervisors of the town, stating the place where such damage occurred and describing generally the insufficiency and want of repair which occasioned it and that satisfaction therefor was claimed of the defendant town, and the filing of a claim therefor. The answer admitted that on the 12th day of September, 1891, the plaintiff caused a notice in writing to be delivered to Luke Elam, one of the supervisors of the town, which was filed in the office of the

town clerk March 26, 1892, and the presentation and disallowance of the plaintiff's claim, and the answer denied all allegations except those specifically admitted.

At the trial the plaintiff gave evidence on her part as to the circumstances of the injury, in substance that it occurred at a rocky point in the highway; that the plaintiff was seated with her child in her arms in an open buggy driven by her son, and they were driving at a walk, when, without warning, the wheel struck a rock and she was thrown out on the ground with her child in her arms, falling on her back in a very rocky place; that her head was cut and bruised and her back badly injured, and she was unconscious for about half an hour; that the rock was in the wheel track, lying partly on its edge, and was partly imbedded in the ground, the part above ground being about six or seven inches square and three or four inches thick, and there were other larger ones lying beside it. The evidence in respect to the rocks in question took quite a wide range.    Many witnesses were examined on each side in respect to it, and the jury viewed the premises.    The witnesses described the place as a rocky one, or patch of rocks in a cut, and about two rods long.    Mr. Persons, a witness for the plaintiff, who had driven over the place about two weeks after the accident, was asked by the plaintiff's counsel to describe the highway at that point during the spring and summer of 1891.    Objection to this question by defendant's counsel was overruled, and he answered: "Well, it was principally rocks.    And the way I remember it, there was a small gully through the center .of the road, and the patch of rocks I should think would be in the neighborhood of two rods long; and the piece of road west of it was smooth and nice, and there was only one rock that I noticed particularly after I heard of the accident; that was about a foot square.    This was the first time I went by after the accident; might be a couple of

Salladay vs. The Town of Dodgeville.

weeks." The answer was objected to, and the court ruled that he might tell the condition of the road the first time he went over it after the accident. He further testified that the "rocky place had been in the same condition that I have described all that season,— that is, whenever I traveled over it;" that there was "quite a considerable travel over it all the time. The width of the traveled portion at this rocky point was just a wheel track for the horses and wagon. I don't think it was wide enough so two teams could pass in that place." Evidence was given tending to show that the road had continued to be as it was in July up to the time of the trial, and there was evidence tending to show that it was repaired somewhat in October of the same year. There was some conflict of evidence on this point, namely, as to whether repairs had been made. The court allowed a witness for the plaintiff, Mr. Pollard, to testify in rebuttal, against the objection of the defendant, that in October of that year Mr. Collingwood and Mr. Shields and other men had been up on the bank, and plowed it all along, and scraped it down, and covered the main road at the rocky point. Witness had some difficulty in getting across there with a load of wheat, and noticed the change when he went back in the evening. This was before the trial and view by the jury.

The plaintiff in making out her cause offered in evidence the notice served on the supervisors mentioned in the pleadings, and objection was made to its reception in evidence as an insufficient description and designation of the cause, character, and kind of injury, and for that the proof showed that the injury was not received from loose rock, but by a rock fast in the track. The court overruled the objection. The substance of the notice has already been stated.

Dr. Pearce testified as to the character and extent of the injuries to the plaintiff; that she had two cuts on the back of her head, extending to the bone, and they had bled con-

siderably; that there were bruises on the back just between the shoulders and just above the lower portion of the spine; that she complained of the pain most just above the lower part of the spine, on each side of it; that he saw her from time to time for several weeks, and had attended her for trouble in her back and spine ever since that time occasionally; that the condition of the back is that there is a point of tenderness at the junction of the sacrum with the last lumbar vertebra, and another between the third and fourth dorsal vertebræ between the shoulders; that she complains of pain radiating from those points; that the nature and cause of it is spinal concussion; that a trouble that has lasted thus far, and as active as this, with the tenderness and pain, would probably continue through life; that during the period of treatment there had been a pregnancy, occurring about eight weeks after the injury, and during that there had not been a chance of making as active treatment as there would have been otherwise; that there was an improvement in her condition for the first five or six weeks, but the last six months he discovered no improvement; that he thought she might have received benefit from treatment in the earlier stages that she could not receive after she became pregnant; that there had been an attempt made to cure her for the first four or five weeks, not since; that since that time he had done nothing except to relieve her pain; that he could have continued to blister the lower part of the spine, but there would have been danger of causing a miscarriage, and this was the reason he discontinued treatment.

The circuit court charged the jury: " If the after pregnancy of the plaintiff may have prolonged the injury or delayed her recovery, the damages which she is entitled to recover in this action, if you find that she is entitled to recover, are not to be reduced by you because of such pregnancy." The court charged the jury, at the request of the

defendant, that " it was the duty of the plaintiff, after the accident, to take reasonable care of herself and to avoid, so far as was reasonably possible, doing anything which would tend to increase, prolong, or render permanent her injuries, sufferings, or disability." The defendant requested the court to charge that if they found from the evidence " that the injuries, sufferings, or disability of the plaintiff were increased or rendered permanent by any want of such ordinary care on her part, or by reason of her becoming pregnant after the accident, and such pregnancy prevented proper medical treatment of her injuries, and such want of treatment resulted in increased prolongation or permanency of her injuries, sufferings, or disability, which would not otherwise have resulted, she cannot recover from the defendant for any increased prolongation or permanency of her injuries, suffering, or disability resulting from such want of care, if you find there was such want of care, or from such pregnancy, if you find there was such pregnancy." This latter instruction the court refused.

The jury, having been out some time, returned into court, stating that they differed on what some of the witnesses testified to as to the condition of the road at the time it was repaired and after, and desired to have the testimony of John Pollard, James Smith, and William Smith read to them again by the reporter. This counsel for both parties agreed might be done. The testimony of Pollard was read. The court stated to them the drift and substance of such testimony of James and William Smith and other witnesses, and an exception was taken because the testimony of the Smiths was not read. The court remarked on this subject: " As it is called to my attention by counsel for the defendant, I state to you that the substance of the testimony of Smith was that there was no change made in this highway in October." The jury found a verdict in favor of the plaintiff for $550, and, after a motion for a new trial for

Salladay vs. The Town of Dodgeville.

various reasons had been overruled, judgment was rendered upon the verdict, from which the defendant appeals.

For the appellant there was a brief by *Reese & Carter* and *W. E. Carter*, and oral argument by *Mr. W. E. Carter*. *J. P. Smelker* and *Aldro Jenks*, for the respondent.

PINNEY, J. 1. The statute requires (S. & B. Ann. Stats. sec. 1339) as a condition of maintaining an action for damages sustained by any person by reason of the insufficiency or want of repairs of any highway, that within ninety days after the happening of such event notice in writing signed by the party, his agent or attorney, shall be given to a supervisor of the town against which damages are claimed, "stating the place where such damage occurred, and describing *generally* the insufficiency or want of repair which occasioned it." The object of the notice is "that the town authorities may investigate and ascertain the facts, both as to the defect in the highway and of the injury occasioned by it." *Plum v. Fond du Lac*, 51 Wis. 393. Reasonable certainty is all that is required. "The notice should point as directly and plainly to the place of the injury as is reasonably practicable, having regard to its character and surroundings." *White v. Stowe*, 54 Vt. 510. And this rule this court has held in *Weber v. Greenfield*, 74 Wis. 238, to be founded in good sense, and may be easily complied with. The notice in *Weber v. Greenfield, supra*, was held defective because misleading, in that it not only wrongly described the place of the injury but was inaccurate in other respects, as fully stated in the opinion of the court. 74 Wis. 236, 237. In this case the road is described as the one leading from the city of Dodgeville past the Floyd school-house in the said town, and the particular place and the particular point is designated as being about 100 yards east of the residence of Mrs. Freeman, and somewhere near the line of sections 20 and 29, in township 7 N., range 3 E., in said

town; and the insufficiency and want of repair, which in this case served to locate the place of injury, was the general bad condition of the highway and *some loose stones* lying in the traveled track of said highway. The evidence does not disclose any other practicable method of describing the *locus in quo* by its surroundings, and shows also that before it was served the plaintiff's husband visited the place with the supervisors, and pointed out the precise defect complained of, and that the supervisors examined the entire road through the rocky point mentioned. The notice was signed by both the plaintiff and her husband, the latter being also a claimant for satisfaction for damages sustained by the same cause. We think that from the notice itself and the objects and points described in it there could be no difficulty experienced in finding the place of the injury, notwithstanding it may have been inaccurate in stating that the injury was caused by loose stones in the traveled track, instead of a stone partly imbedded in the road, as the evidence showed to be the fact (*Fopper v. Wheatland,* 59 Wis. 623), and meets the requirements of the rule stated in *Weber v. Greenfield, supra.* As a mere question of variance in respect to the stone being partly imbedded in the road, instead of being loose stones, we think, in view of the condition of the road at this rocky point, it could not have misled the town officers. Such a variance between an allegation in a pleading and proof would be properly disregarded. The circumstance that the stone which caused the injury was described as loose, when in fact it was fastened or imbedded in the track, was, we think, immaterial, if either in a loose or imbedded condition it constituted an insufficiency or want of repair, as the jury have found to be the fact.

2. There was no error in admitting the evidence of the witness Persons describing the condition of the road at the point in question two weeks after the accident, and

Salladay vs. The Town of Dodgeville.

during the spring and summer of 1891. There was no evidence to show that any repairs had been made within that time, and the evidence tended to show that its condition had remained during all this time practically unchanged, down to the 7th of October. As we understand the testimony, it was attempted to be shown on the part of the town that there had been no material change down to the time of the trial. As the jury had visited or were about to visit and view the place, it was competent to show by the witness Pollard that earth had been plowed up on the banks and thrown in upon the track, materially changing the situation. As this evidence was offered in rebuttal of the defendant's claim, there can be no doubt that it was properly received.

3. The objection that it was error for the court not to read to the jury the evidence of the two Smiths who were witnesses at the trial, as well as that of Mr. Pollard, when they came into court asking that the testimony of these witnesses might be read to them, cannot be maintained. We do not understand that the court refused to have the testimony of the Smiths read, but that after the testimony of the witness Pollard had been read the court stated the substance of their evidence on the point in question. How much of the evidence and what parts of it may be stated anew or read to the jury under such circumstances is a question within the discretion of the presiding judge, under sec. 2855, R. S., and error can be assigned in this repect only in case of a clear abuse of such discretion. *Byrne v. Smith*, 24 Wis. 68.

4. Error is assigned that when the jury came into court to hear some of the testimony read, the presiding judge stated that "there is no question at all, under the testimony, that there was a stone there [in the traveled track]. Its size and character and exact location you are to determine." He stated also, in substance, the testimony of the

witnesses on both sides as to its size and situation, and added that " you will have to determine these matters. There is a conflict of testimony, and you will have to try and reconcile this testimony and arrive at some conclusion." We do not think there was any error in this respect. We think the undisputed testimony of all witnesses having any definite knowledge on the subject is that there was a stone or stones in the traveled track. The court left the question of their size, character, and location to the jury to find whether they constituted a defect or want of repair which caused the plaintiff's injury.

5. The instructions of the court in respect to the effect of the after pregnancy of the plaintiff upon the question of damages, we think were correct. If the plaintiff had rendered the consequences of the wrongful act of the defendant more severe or injurious to herself by some voluntary act which it was her duty to refrain from, or if by her neglect to exert herself reasonably to limit the injury and prevent the damages, in the cases in which the law imposes that duty, and thereby she suffered additional injury from the defendant's act, evidence is admissible in mitigation of damages to ascertain to what extent the damages claimed are to be attributed to such acts or omissions of the plaintiff. It is a question of negligence, and the measure of duty is ordinary care and diligence in the adoption of such measures of care or prevention as the case required and were within her knowledge or power. 1 Suth. Dam. § 155, *ut supra*. It does not appear that her medical adviser gave her any caution to avoid sexual intercourse or even pregnancy, nor is there any evidence to show that she knew or understood that the nature of her injury was such that it was prudent that she should do so. The mere fact that eight weeks after the injury pregnancy occurred, and when no caution in that respect appears to have been given by her medical adviser, is not necessarily and as a

matter of law sufficient ground to justify a reduction of damages for the injury caused by the defendant's negligence, although the results of the injury may have been thereby prolonged or her recovery delayed. The instructions given were correct in view of the testimony, and the one asked by the defendant was properly refused. The doing of any act which prevented or retarded her recovery is not of itself a ground for reduction of damages. To have that effect it must have been a negligent act, and whether an act is or is not negligent is a question for the jury, and not of law for the court, if different minds may properly draw different inferences, even from the same established facts. The instructions asked entirely ignored this material consideration, whether the plaintiff was negligent or at fault for what occurred after her injury.

A considerable number of witnesses were examined on each side, and in many respects the evidence is conflicting. The circuit court was satisfied with the findings of the jury, and denied — as we think, very properly — a motion to set aside the verdict as being contrary to the evidence. The verdict is a small one in view of the evidence as to the character of the plaintiff's injuries. We find no error justifying a reversal of the judgment of the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.