Laird vs. Town of Otsego.

NEWMAN, J., took no part.

LAIRD, Respondent, vs. TOWN OF OTSEGO, Appellant.

*March 6 — April 3, 1895.*

*Injury from defective highway: Sufficiency of notice: Piles of rubbish, etc., frightening horse: Court and jury: Proximate cause.*

1. The notice of an injury from a defective highway, given pursuant to sec. 1339, R. S., stating that the highway was insufficient and

Laird vs. Town of Otsego.

obstructed by reason of old planks having been piled in the traveled part thereof one mile east of the village of O. and near to and a little east of the farm house of one B., and that there was an embankment at the point named, is *held* to be reasonably certain and to point out sufficiently the place, although the description might have been made more definite.

2. Whether a pile of old planks and rubbish left by the roadside upon repairing a bridge was an insufficiency or defect in the highway, as being an object naturally calculated to frighten horses of ordinary gentleness, is *held* in this case to have been a question for the jury.

3. In an action for injuries alleged to have been caused by old planks and rubbish in the highway which frightened plaintiff's horse, it appeared that there was a pile of planks and rubbish on the west side of a bridge and also some planks east of the bridge, and the evidence tended to show that the horse, after being frightened at such pile, was again frightened by the planks east of the bridge, and that but for the second fright the accident would not have happened. The court refused to submit in the special verdict questions as to whether the horse was frightened and shied at the planks east of the bridge and whether that was the efficient and immediate cause of the accident, and gave instructions which tended to withdraw the attention of the jury from that point and submitted the case wholly in respect to the pile west of the bridge. *Held*, error.

APPEAL from a judgment of the circuit court for Vernon county: A. W. NEWMAN, Circuit Judge. *Reversed*.

This action was for the recovery of damages against the defendant town for an injury received by the plaintiff while traveling upon and along one of its highways, alleged to be defective and insufficient by reason of the fact that a bridge had been rebuilt by the authority of the town across the highway where it passed along and over an embankment about fourteen feet wide and about two feet high, and the rubbish, consisting of old planks, pieces of timber, and other refuse matter, had been piled and allowed to remain on the margin and along the side of the said grade in such a manner that the same naturally tended to frighten horses; that while the plaintiff was traveling along said highway in a

carriage drawn by a horse and driven by her husband, with whom she was riding, the said horse was frightened at the said planks and rubbish, and shied and became unmanageable, and went down the embankment, overturning the carriage, whereby she was thrown to the ground and against a wire fence, and one of her limbs was broken and she was otherwise seriously injured; that her injury was wholly due to the careless and negligent manner in which the defendant had so constructed and maintained its said highway, and without any fault on her part. . The answer put the substance of the complaint in issue.

Upon trial before a jury, the plaintiff offered in evidence a notice of her injury to the. supervisors of the town, in brief, that she had been injured April 7, 1889, by reason of a defective highway, the same being insufficient, out of repair, and obstructed by reason of old plank having been piled in the traveled part of said highway, one half mile east of the village of Otsego in said town, and near to and a little east from the farm house of one Thomas Bowden; that she was riding in a buggy at the time of said injury; that the horse drawing the same became frightened at the planks aforesaid, went down the embankment at the point named, and she was thrown to the ground, etc. Objection was made that the notice did not sufficiently describe the obstruction, and did not identify the place where the accident happened, with sufficient certainty, but the notice was received in evidence.

The evidence at the trial showed that on the day in question the plaintiff and her husband had passed the alleged obstruction on their way west to Otsego. That they passed it without any difficulty. That there was a pile of plank and rubbish on the west side of the bridge, and on the north side of the grade, and twelve and one-half feet from the north side of the grade, piled up in a square form, fifteen inches high, and the rubbish lay mostly on the back of it,

Laird vs. Town of Otsego.

and a piece eight by eight, twelve feet long, lay on top of it in an oblique position, the end towards the road being rotten. On the east side of the bridge and north side of the grade there were two whole planks and a piece. Some of the plank extended from the grade towards the fence, suitable in muddy weather to walk on up to the grade to cross the bridge. The others lay along the margin of the road, and neither extended into the traveled track. Neither of them was any obstruction to travel, and there was nothing peculiar about them,— they were ordinary plank. The grade north of the pile of rubbish on the west of the bridge was fourteen inches high, and lower further back. On the south the grade was three feet high. On the east of the bridge, where the buggy went off the grade, it was twenty-four to twenty-six inches high. The plaintiff and her sister and husband started to go to their home eastward from Otsego, all sitting on the same seat, and when they got within three rods of the pile west of the bridge the horse began to shy to the right. Laird struck the horse on the right side, before coming to the bridge, three or four times. The plaintiff testified: "I could not tell how near the south margin west of the bridge we went, but so near I feared we were going to tip over. We were quite near the side of the bridge, and still he managed to bring the horse a little to the north in crossing the bridge. After the horse crossed the bridge he saw the planks that were left on the east side of the road, and seemed to take another fright at them, and began to shy to the south side again. . . . The wheel began to go down the bank, and Laird, fearing the buggy would tip over, drew on the right line, so that we would go down straight instead of sidewise." When the forward wheels went down, her sister fell out on the right-hand side, and Laird was thrown out on the left. The horse turned in a circle, and came up on the grade, and Laird was unable to hold the horse, the lines slipped through his hands, and the

horse went diagonally across the grade to the north side, where the plaintiff was thrown out and injured. On cross-examination she said: "As it passed along the east side the horse seemed to take another fright. It looked at it [the plank] and shied the other way. I suppose that is what it was frightened at. . . . When it saw the other material, it seemed to take another fright." The plaintiff's sister testified: "As we crossed the bridge she became frightened at these planks on the north side of the grade on the east side of the bridge, and she commenced shying again. . . . I don't think he was whipping her when she passed the bridge. Then she found something else to shy at, and began to shy again." The evidence was very full on both sides as to the character of the alleged obstructions, and whether they were objects calculated to frighten horses in passing them, and as to the character of the horse for gentleness, and whether he was driven properly on this occasion. There was no claim that the roadway was not in itself sufficient and in good condition.

The court submitted the case for a special verdict, to find, among other things: "(1) Was the rubbish or pieces of plank and old timbers which were within the limits of the highway a defect in the highway which rendered it not reasonably safe for travel on it? (2) Did such defect in the highway cause the plaintiff's accident?" The defendant's counsel requested the court to submit to the jury the following questions: "(1) Do you find that the horse was frightened and shied at the plank on the east side of the road [bridge]? (2) If you say, 'Yes,' in answer to the last question, do you find that such plank was the proximate cause of the injury?" The court refused these requests.

In charging the jury the court gave no special instructions in regard to these questions, although the case was submitted for a general as well as a special verdict, and said to the jury that they were "to look at this defect that is claimed,

this pile of rubbish by the side of the highway, and say whether it was such a defect as would make the town liable within the rule" the court had given them; "whether it was such an object in the highway as naturally could or would frighten horses of reasonable, ordinary gentleness, and reasonably well broken, and being at the time driven with ordinary and reasonable care." And on the question of proximate cause the court said: "You will look at that as the evidence shows you, and say whether that was such an object in the highway as naturally and reasonably should be expected, by men of ordinary experience in such things, to produce such an accident as the plaintiff met with."

The jury answered all the questions submitted in favor of the plaintiff, and found a general verdict in her favor for $2,500, upon which she had judgment, and from it the defendant appealed.

*H. W. Chynoweth* and *John S. Maxwell*, for the appellant, argued, among other things, that no negligence or default on the part of the town was shown. *Barrett v. Walworth,* 64 Hun, 526; *Kingsbury v. Dedham,* 13 Allen, 186. The notice of the injury was insufficient. It should be couched in such language that from it alone the officers of the town could go directly to the place where the defect is said to exist. *Hiner v. Fond du Lac,* 71 Wis. 74; *Weber v. Greenfield,* 74 id. 234; *Sowle v. Tomah,* 81 id. 349; *Gardner v. Weymouth,* 155 Mass. 595; *Farnsworth v. Mt. Holly,* 63 Vt. 293; *Biesiegel v. Seymour,* 58 Conn. 43.

*John J. Sutton,* for the respondent.

PINNEY, J. 1. The giving of the notice required by the statute (sec. 1339, R. S.) was a condition precedent to the right of the plaintiff to recover. Without an allegation showing that notice had been given, the complaint would have been demurrable. *Sowle v. Tomah,* 81 Wis. 351; *Weber v. Greenfield,* 74 Wis. 234, 236. Whether the notice in the

present case was sufficient is not entirely free from doubt. "One half mile east of the village of Otsego in said town," is not a certain and definite point. From what point in the village would the half mile be estimated or measured? The obstruction or insufficiency in the highway might be of such a character or so conspicuous as to assist in finding the point intended. That the obstruction was "near to and a *little east* from the farm house of one Thomas Bowden" served to indicate the vicinity of the obstruction, and that there was "an embankment at the point named" where the plaintiff received the injury, serves, we think, in connection with the character of the alleged obstruction, namely, "old plank piled in the traveled part of said highway," to render the notice reasonably certain and point out sufficiently the place of the alleged obstruction. It appears that there was a bridge across the road at the point in question, on the west side of which, and by the side of the bridge, there was a telegraph pole, and by reference to which the notice could have been made more certain; but it cannot be said that the notice in this case, as in *Weber v. Greenfield,* 74 Wis. 234, was inaccurate and afforded no aid to the authorities to investigate and find out whether or not the highway was insufficient. It does not occur to us that with the description contained in this notice there ought to be any practical difficulty in ascertaining the place intended to be described. Where a notice conveys the necessary information to the proper person, it is sufficient, although it might have stated it with greater particularity. We think that the notice was sufficient, within previous decisions. *La Crosse v. Melrose,* 22 Wis. 463; *Wall v. Highland,* 72 Wis. 435; *Hein v. Fairchild,* 87 Wis. 258; *Fopper v. Wheatland,* 59 Wis. 623; *Salladay v. Dodgeville,* 85 Wis. 318.

2. It was contended on behalf of the defendant that as a matter of law neither the plank on the east side or west side of the bridge could be considered as an insufficiency or de-

fect in the highway. The case seems to have been submitted to the jury wholly in respect to the pile of plank and rubbish on the west side of the bridge. Whatever force there may be in the argument that old material, to the extent mentioned, left by the roadside upon repairing a bridge or culvert ought not to be regarded as an insufficiency, defect, or obstruction in the highway, we think that, under the evidence in this case, that was an argument to be addressed to the jury and not to the court, and that it was for the jury to find whether the plank and rubbish were an object naturally calculated to frighten horses of ordinary gentleness, when properly driven on and along the highway. *Foshay v. Glen Haven,* 25 Wis. 288.

3. The two questions which the defendant's counsel asked to have submitted to the jury were fairly within the issue and presented by the evidence on the part of the plaintiff, referred to in the foregoing statement. It tended to show that, after passing the pile of plank and rubbish on the west side of the bridge, the plaintiff's husband had been able to so control the horse as to bring him more into the middle of the road and from the south side of the embankment, and that the horse " seemed to take another fright; it looked at the plank [on the east side] and shied away; I suppose that is what it was frightened at." The jury might have found upon the evidence that, but for the second fright of the horse, the plaintiff would have passed on in safety, and that such second fright and shying of the horse were the efficient and immediate cause of the injury. The defendant was entitled to have this question submitted to the jury under proper instructions. As the court was charging the jury with a view to a general as well as a special verdict, and in view of the evidence, the defendant might properly insist that the jury should find, first, whether the horse was frightened and shied at the plank on the east side, and whether that was the efficient and immediate cause of the accident.

The court refused to submit these questions.   If they were somewhat inartistically framed, they were certainly sufficient to call the attention of the court to the defendant's contention, and the effect of the instructions given was such as to withdraw the attention of the jury from this point, and the case was put to the jury upon the ground of a single alleged defect, "this pile of rubbish by the highway," to say whether it was "such a defect as would make the town liable within the rule," and whether it "was such an object in the highway" as should naturally and reasonably be expected to produce such an accident.   There was a pile of plank and rubbish west of the bridge, which first frightened the horse and made it shy, and there were the plank on the east side, at which it "seemed to take another fright; it looked at it and shied the other way."   We understand that the instructions refer to the pile west of the bridge, and that the jury may have fairly so regarded them, and in that view they had a tendency to withdraw the attention of the jury from the question whether the fright of the horse at the plank on the east side of the bridge did not cause the plaintiff's injury.   If the plank on the east side of the bridge were the true cause of the accident, and they were not a defect in or obstruction of the highway, then the plaintiff could not recover.

For the errors pointed out, in not submitting the questions stated to the jury, and in the instructions given, there must be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

NEWMAN, J., took no part.