LEE, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*November 8 — December 16, 1898.*

*Railroads: Injury to brakeman coupling cars: Negligence: Setting aside verdict: Pleadings as evidence: Special verdict.*

1. Where, in an action against a railroad company for personal injuries alleged to have been caused by defendant's negligence, the only evidence in support of the verdict was the testimony of the plaintiff himself, and his account of the manner in which he received the injuries was conflicting in itself, and wholly at variance or inconsistent with many statements made by him out of court, as testified to by many different witnesses, and as contained in a written statement signed by him, it was an abuse of discretion to refuse to set aside a verdict for the plaintiff.

Lee vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

2. A complaint for the same cause of action, in an action brought by the plaintiff in a court of another state, verified by plaintiff's guardian *ad litem* and signed by his attorney, was admissible in evidence for the purpose of impeaching the plaintiff's testimony.

3. Although the questions submitted for a special verdict in an action for injuries by negligence may cover generally all phases of defendant's negligence, yet, under the provisions of sec. 2858, Stats. 1898, the court should submit to the jury the particular physical facts directly put in issue by the pleadings, when properly requested so to do.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Reversed.*

*L. K. Luse,* attorney, and *Thomas Wilson,* of counsel, for the appellant, argued, among other things, that the court erred in refusing to receive in evidence the complaint in the suit pending in Minnesota between these parties. Plaintiff testified that he employed the attorney to commence that suit for this injury, and, his statement to the contrary notwithstanding, it is to be presumed that he stated to his attorney the facts on which he relied as his cause of action. *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526, 530, 531; *Bliss v. Nichols,* 12 Allen, 443, 445; *Currier v. Silloway,* 1 id. 19, 20; *Gordon v. Parmelee,* 2 id. 212, 213, 215; *Bogle v. Chase,* 117 Mass. 273; *Ayres v. Hartford F. Ins. Co.* 17 Iowa, 176, 187, 188; *Brown v. Jewett,* 120 Mass. 215.

*W. F. McNally,* for the respondent, argued, *inter alia,* that, inasmuch as no motion for a nonsuit or to direct a verdict was made in the trial court, and there was evidence for the plaintiff sufficient to sustain the verdict, the refusal of the trial court to set it aside cannot be reviewed on appeal. *Bank of Commerce v. Ross,* 91 Wis. 323. It was not error to refuse to admit in evidence against the plaintiff his complaint in the Minnesota suit, not signed or verified by himself. If competent at all, it only amounted to an oral admission. It was incompetent without evidence to show how far the attorney was instructed by the plaintiff. *Dennie v. Williams,* 135

Mass. 28; *Delaware Co. Comm'rs v. Diebold S. & L. Co.* 133 U. S. 473; *Cook v. Barr*, 44 N. Y. 158; *Vogel v. D. M. Osborne & Co.* 32 Minn. 167; *Combs v. Hodge*, 21 How. 397; *Pope v. Allis*, 115 U. S. 363; *Baldwin v. Gregg*, 13 Met. 253; *Starkweather v. Kittle*, 17 Wend. 20; *Boileau v. Rutlin*, 2 Exch. 665. The court had a right to refuse to submit particular questions for a special verdict where no request had been made for a special verdict. *Fenelon v. Butts*, 53 Wis. 344; *McDougall v. Ashland S. F. Co.* 97 id. 382. The special verdict submitted by the court disposes of all the issuable facts. *McCoy v. Milwaukee St. R. Co.* 88 Wis. 56.,

Cassoday, C. J.    This action is to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant as rear brakeman on a freight train. It appears from the record and is undisputed that the defendant's line of railway coming into the station of Gordon from the north crosses a trestle spanning the St. Croix river; that the top of the trestle consists of square ties laid five inches apart, upon which the rails of the track, including guard rails, are laid, the ties being twelve feet in length, and the width of a box car nine feet seven and one-half inches; that south of this trestle is the station of Gordon, with a passing track to the west of the main track, extending from the 900-foot mark south along the track beyond the station; that January 17, 1895, about 8:35 a. m., a freight train of thirty loaded cars, running south, was about to pass upon the side track at the switch south of the south end of the trestle for the purpose of passing the passenger train running north to Duluth; that the freight, in attempting to head in upon the side track, broke into two sections upon the trestle; that the forward section consisted of the engine and about twenty-one cars, and the rear section consisted of the caboose and about eight cars.

The complaint, which is in the usual form in such cases,

among other things specifically alleges "that when both sections came to a standstill the rear end of the forward section was about four rods distant from the forward end of the rear section; that the plaintiff, acting within the line of his duty as such rear brakeman, procured a new link, and coupled it to the rear end of the forward section of said train, and then gave the usual signal for said forward section to back up one car length; that said forward section did so back up and stop about ten or fifteen feet from the forward end of the rear section; that this plaintiff then immediately, acting within the line of his duty and without fault or negligence on his part, stepped to the forward end of the aforesaid rear section for the purpose of drawing the pin and removing a part of the aforesaid broken coupling link, and while so engaged in drawing said pin and removing said link the defendant and its servants and engineer carelessly and negligently, without ringing the bell or sounding the steam whistle on said train, and without giving the plaintiff any signal or warning whatever, suddenly backed up and ran said forward section of said train onto this plaintiff; that the wheels of the train ran over and bruised and crushed the left foot and leg of the plaintiff so that the same had to be amputated near the hip.

The answer consists of admissions of certain facts not so specifically alleged, and then denies each and every allegation of the complaint not so specifically admitted.

At the close of the testimony the counsel for the defendant requested the court to submit the case to the jury on a special verdict, and at the close of the trial the jury returned a special verdict to the effect: (1) That the defendant's servants in charge of the front section of the train were guilty of a want of ordinary care in backing the same up at the time of the plaintiff's injury; (2) that such want of ordinary care was the proximate cause of the plaintiff's injury; (3) that the plaintiff was not guilty of any want of ordinary care on

his part that contributed to his injury; (4) that the plaintiff had suffered damage by reason of his injury to the amount of $4,000.

From the judgment entered thereon in favor of the plaintiff for the amount named, with costs, the defendant appeals.

1. The defendant moved to set aside the verdict and for a new trial for errors in the rulings of the court on the trial; and, among other things, on the ground that the verdict is not sustained by the evidence, but is against the great and substantial preponderance of the evidence, and that it would be unjust to permit it to stand. The only evidence in support of the verdict is the testimony of the plaintiff himself, and that is in direct conflict with the testimony of a large number of witnesses; and, besides, the plaintiff is pretty effectually impeached by his own contradictory statements. The portion of the complaint quoted above and the denials in the answer put in issue five questions upon which there is such conflict: (1) When both sections of the broken train came to a standstill, was the rear end of the forward section about four rods distant from the forward end of the rear section? (2) Did the forward section of the train back up and stop about ten or fifteen feet from the forward end of the rear section? (3) Was the bell rung before the train started to back up? (4) Was the forward section of the train suddenly backed up by the defendant's servants without giving any signal or warning? (5) Was the plaintiff guilty of contributory negligence? There is also a sharp conflict between the plaintiff and other witnesses upon the following questions, bearing directly upon those so put in issue by the pleadings: (6) Did the plaintiff walk along in front of the moving section of the train as it moved back, stepping from tie to tie? (7) Did he, in so doing, slip and fall, thus causing his injury?

Upon the first of these questions, the testimony of the plaintiff corresponds substantially with his complaint, but it

is in direct conflict with at least three witnesses, to the effect that when they stopped they were from eleven to fourteen rods apart.   As to the second question so in issue, the plaintiff testified to the effect that after the two sections had so come to a standstill and he had given a one car length signal, the forward section was backed up about the length or length and a half of a car, and then stopped.   At least four of the train men testified to the effect that before the plaintiff gave the signal to back up the forward section had backed up slowly for several rods, and was still backing up when he gave such signal, and did not stop until after the injury; and the same witnesses testified that the forward section at no time suddenly backed up or started up without signal or warning, or at all; and the only witness who saw him give such signal testified that it was not a one car length signal, but a back up signal, which corresponds with the movement of the forward section of the train as testified to by the defendant's witnesses; and in one place the plaintiff testified that he gave a "back-up signal."   It is admitted that July 21, 1894, and about the time the plaintiff commenced work for the defendant, he signed a written agreement to the effect that he would not go "between cars in motion to couple or uncouple them."   It appears that the train was backing when the coupling broke; that when the engine started to go ahead the plaintiff was on the rear section, and noticed that the two sections of the train were parting, and so he set three brakes on that section, and stopped it.

The plaintiff gives different versions of the transaction which differ widely from each other.   One is to the effect that after the two sections had separated and stopped he went back to the caboose, in the rear section, and got a link and pin, and then walked along south to the forward end of the rear section, and then pulled out the broken link and put in a good one, and then stepped out to the side of the bridge and gave the conductor, who was well ahead on the

forward section, a one car length signal to back up; that until he gave the signal the forward section of the train had not moved after the train broke in two; and that then he took two or three steps, and walked in to pull the pin, and found it bent, and he gave two or three jerks, and the car came back on him quickly and threw him down. In his verified complaint he alleges that when the two sections of the train stopped four rods apart, the plaintiff procured a new link, and coupled it to the rear end of the forward section and then gave the signal; that the forward section then backed up and stopped ten or fifteen feet from the forward end of the rear section; that he then stepped to the forward end of the rear section to draw the pin and remove a part of the broken coupling link, and while so doing the forward section, without warning, suddenly backed down on him. In one portion of his testimony he states that after he gave the signal he had no idea how fast the forward section ran back,— whether one mile an hour or ten miles an hour; that he did not know, as a matter of fact, that in a single car length it could not get up a speed of more than one mile an hour; that there were twenty cars in the section, and they would have to move very slow, necessarily, in backing up grade; that, after the forward section stopped with the rear end of it fifteen or twenty feet from the forward end of the rear section, he walked in three or four steps to get the broken link out of the rear end of the forward section; that the pin was bent, and it stuck in the drawbar, where there was a portion of the broken link; and that while he was shaking the pin, trying to get it out, the forward section suddenly backed and knocked him over. It is undisputed that the ties on the trestle where the accident occurred were flat, and eight inches wide, and frosty on that morning, and that after the injury the plaintiff was found under the second car from the rear end of the forward section, and that the ends of the two sections were several feet apart.

Six witnesses testified as to conversations with the plaintiff at different times after the injury, and each swore to the effect that the plaintiff, giving an account as to the manner in which he was injured, stated in his presence and hearing that he slipped and fell on the ties, and then the car ran onto him. One of such witnesses (Redington), employed in the claim department of the defendant, testified that he had an interview with the plaintiff January 30, 1895 and that he wrote down the plaintiff's version of the transaction, and then handed the same to the plaintiff to read, which he did, and pronounced it correct, and then signed it. That statement was, among other things, to the effect that when the two parts of the train separated he went back to the caboose, and got a link and pin, and came back, and signaled the engineer on his side of the car to back up one car; that he then laid the pin and link down on the ties of the bridge: that, as the head end backed up, he stepped in between the rails, and tried to take out the piece of the broken link in the drawbar by pulling the pin; that while doing so he was walking back with the car,— stepping the ties,— and his right foot slipped down through the ties, and he fell or threw himself on his stomach, and, before he could tell how, his left leg got under the wheels, and he was dragged a few feet before the train stopped, but he thought not until it had struck the hind end; that the cars were moved back quite fast,— six to eight miles per hour,— but he supposed it was safe for him to go in there to do the work he was at; that he knew they were on the bridge at the time; that the accident was one he could hardly blame any one for, as it was likely to happen to any one under the circumstances; that he was only nineteen years old when he began work for the defendant, but that he told the man who hired him that he was twenty-one years old.

July 27, 1895, one C. P. Hill, employed in the claim department of the defendant, had an interview with the plaint-

iff; and he testified to the effect that the plaintiff asked him if he had the written statement so taken by Redington; that he told him that he had; that the plaintiff then requested him to read it over to him, and he did so, correctly; that the plaintiff then said he desired to make one correction, to the effect that he was on the east side of the train, and gave the signal to the conductor, who repeated it to the engineer; that such correction was then written out at the foot of the statement, reciting that the statement was otherwise correct. The plaintiff concedes that he signed the statement, and also the correction at the foot, but insists that he did not read the statement, nor hear it read.

August 28, 1895, the plaintiff made his verified petition for the appointment of a guardian *ad litem* by a Minnesota court, and in that he predicates his right of action wholly upon the failure of the defendant to afford him a reasonably safe place in which to perform his duties as such brakeman, and the negligence of the engineer in not backing and moving the train in and at a reasonably safe and careful rate of speed. In this action no such claim is made.

If the plaintiff's testimony stood alone, it would still be very difficult to reach any satisfactory conclusion as to just how the plaintiff received his injuries, in view of his different and inconsistent versions of the transaction. With all such conflicting testimony of the plaintiff as to the circumstances under which he was injured, and with so many statements made by him out of court, totally at variance or inconsistent with his testimony in court, sworn to by so many different witnesses, and, in part, evidenced by the plaintiff's own signature to a written statement, we are constrained to hold that it was an abuse of discretion not to set aside the verdict of the jury and grant a new trial. *McCoy v. Milwaukee St. R. Co.* 82 Wis. 215; *Hardy v. Milwaukee St. R. Co.* 89 Wis. 185; *Adams v. C. & N. W. R. Co.* 89 Wis. 647. The only portion of the plaintiff's testi-

mony upon which the verdict could stand is not only made incredible by all the evidence in the case, but is intrinsically improbable. *Id.* In such cases the trial court, which is vested with a very broad discretion,— far more so than this court,— should promptly set aside the verdict. *Badger v. Janesville Cotton Mills,* 95 Wis. 599; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277; *Maitland v. Gilbert P. Co.* 97 Wis. 491. Of course, this court has frequently sustained verdicts supported only by a single witness, whose testimony was in conflict with a number of other witnesses. But a verdict must be supported by credible evidence as to facts not intrinsically improbable. There is no pretense in this action that the bridge was not a reasonably safe place to make the coupling. There is no claim of liability merely because the link broke, and the pin bent, and the train separated into two sections; nor because the forward section of the train backed up slowly in obedience to a signal given by the plaintiff. *Holum v. C., M. & St. P. R. Co.* 80 Wis. 299. There was no other way for the two parts of the train to be brought together. It appears to be undisputed that the proper way to have made the coupling was to adjust the link and pin prior to signaling the forward section to back up. Certainly, it was perilous, and contrary to the rule suggested, to step in before the moving section of the train, and attempt to take out the broken link or pull out the bent pin.

2. So we must hold that it was error to exclude the complaint for this same cause of action in a Minnesota court, verified by the plaintiff's guardian *ad litem,* September 5, 1895, and signed by his attorney, by way of impeachment. True, it was not verified nor signed by the plaintiff himself, but, under the rulings of this court, it was, nevertheless, admissible in evidence for the purpose mentioned. *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526. For other cases see the supplemental brief of counsel for the defendant. That

complaint contained allegations in conflict with portions of the plaintiff's testimony upon which the verdict must have been based, and in harmony with certain portions of the testimony on behalf of the defendant.

3. Error is assigned because the court refused to submit to the jury certain questions requested by the defendant as a part of the special verdict. The statute requires the trial court, when requested in time, as here, to "direct the jury to find a special verdict . . . in the form of questions, in writing, relating only to material issues of fact, and admitting a direct answer, to which the jury shall make answer in writing." Stats. 1898, sec. 2858. That statute has frequently been construed "to limit such questions to such facts as are controverted and put in issue by the pleadings, or, at most, to such as might properly have been put in issue by the pleadings." *Heddles v. C. & N. W. R. Co.* 74 Wis. 258, and cases there cited. But the form of the verdict in all such cases is very much in the discretion of the trial court. *Id.* In the case at bar the court submitted four questions to the jury. One of them was the question of contributory negligence, and, of course, pertained to the defense. The other three cover the plaintiff's cause of action; that is to say, whether the defendant was negligent, and, if so, whether such negligence was the proximate cause of the plaintiff's injury, and, if it was, then the amount of damage the plaintiff had sustained by reason of the injury. The questions so submitted undoubtedly covered all phases of the defendant's negligence, and so would a general verdict. In fact, the questions so submitted are but little more than a general verdict in sections. They are conclusions of fact, rather than the physical facts actually put in issue by the pleadings, as stated. Some of such physical facts the defendant requested the court to submit to the jury,— as, for instance, Did the forward section of the train, after starting to back up, come to a full stop before the plaintiff was hurt? We are con-

strained to hold that such physical facts, so directly put in issue by the pleadings, and so requested, should have been submitted to the jury. *Davis v. Farmington*, 42 Wis. 425, 429, 433; *Laird v. Otsego*, 90 Wis. 25.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.