SLADKY, Respondent, vs. MARINETTE LUMBER COMPANY, Appellant.

*May 18 — June 21, 1900.*

*Special verdict: Instructions to jury: Negligence: Master and servant: Obvious defects: Failure to warn: Assumption of risk: Contributory negligence.*

1. Where a special verdict is requested it is the duty of the trial court under sec. 2858, Stats. 1898 (providing that such a verdict shall be in the form of questions, in writing, relating only to material issues of fact and admitting of direct answers), to limit the questions to issuable facts, in contradistinction to mere evidence.

2. In an action for personal injuries sustained by an employee in defendant's sawmill while at work on the log deck, where the only negligence on defendant's part, put in issue by the pleadings, was failure to furnish a reasonably safe place to work and failure to instruct and warn plaintiff as to the risks and dangers of the employment, the court submitted to the jury, as part of a special verdict, the question, "Was the defendant guilty of negligence in *allowing* plaintiff to work upon its log deck?" and in connection therewith instructed them, among other things, that said question embraced most of the principal questions in the case, including the questions whether defendant's log deck was a reasonably safe one, and whether defendant was ignorant of the work to which he was put and should have been instructed by defendant; and that in answering it they should determine whether such log deck was a reasonably safe place in which to work, whether it was of a kind in common use, what knowledge plaintiff had about that sort of work, and whether he had exercised ordinary care and prudence in handling the logs. *Held*, that said question, which in itself did not cover any issuable fact, was made by the instructions to cover almost every issue that could have been covered by a general verdict; and that its submission defeated the very object of a special verdict.

3. Where the court sets aside, because against the uncontradicted evidence, the jury's finding to a question in the special verdict in such case, in substance, that log docks with substantially the same appliances as defendant's were not in common use, it should also have set aside the answer to other questions which, under the instructions of the court, the jury were at liberty to answer as they did on the sole theory that such appliances were not in common use.

Sladky vs. Marinette Lumber Co.

4. Failure to instruct or warn an employee as to the risks and hazards attending the employment is not negligence, unless the employer knew, or ought to have known, that such warning and instruction was necessary.

5. In an action for personal injuries it appeared, among other things, that plaintiff, a man twenty-six years of age, had worked in sawmills and among saw-logs for eight years; that he sought work from defendant inside its mill, stating he had rolled logs with a cant hook, though not onto a saw carriage; that the log deck of defendant's mill and its appliances were substantially the same as those in common use, the skids being unprovided with stops or barriers to prevent the logs from rolling or slipping too far when the carriage was in motion, which condition was open and obvious to plaintiff, and such as he was bound to recognize; and that before the injury plaintiff had worked on the log deck a day and a half and had handled 1,850 logs. *Held*, as a matter of law, that plaintiff assumed the risks of his employment.

6. In an action by a sawmill employee for personal injuries it appeared, among other things, that it was the proper, usual, and safe way to roll the logs down to where they were to be loaded onto the saw carriage when the carriage was back from the saw and in front of the skids on the log deck. *Held*, that plaintiff, having voluntarily chosen to roll the log down on the skids when the saw carriage was away, was guilty of contributory negligence.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Greene, Vroman, Fairchild, North & Parker,* and oral argument by *H. O. Fairchild.*

For the respondent there was a brief by *John Wattawa,* attorney, and *G. G. Sedgwick,* of counsel, and oral argument by *Mr. Sedgwick.*

CASSODAY, C. J. This action was commenced May 18, 1897, to recover damages for personal injuries sustained by the plaintiff, while in the employ of the defendant, April 28, 1896, rolling logs from the trough onto the iron skids, and down such skids to the saw carriage when in front of the saw.

Sladky vs. Marinette Lumber Co.

Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the defendant was guilty of negligence in allowing the plaintiff to work upon the log deck; (2) that such negligence was the proximate cause of the plaintiff's injury; (3) that the plaintiff was not guilty of negligence which contributed proximately to the injury; (4) that log decks with appliances substantially the same as the defendant's were not in common use; (5) that the defendant's log deck was not of approved construction for use in such mills; (6) that the defendant's log deck was not reasonably safe for an unskilled workman using ordinary care and prudence himself; (7) that the plaintiff did not tell defendant's agent at the time of his employment, or before his injury, that he had done such work before; (8) that the log which caused the plaintiff's injury was not a smooth one, with the bark off, but a new one, with the bark on; (9) that the work of attending the log deck required that the person doing so should be skilled otherwise than in the use of a cant hook; (10) that ordinary care and prudence on the part of the defendant required other stops or barriers to be used on its log deck than such as were used; (11) that the defendant was bound to inform the plaintiff of the dangerous character of the work; (12) that the plaintiff was entitled to recover as damages $5,000.

The fourth question so submitted to the jury, and their answer thereto, read as follows: " *Q.* 4. Were log decks with appliances substantially the same as defendant's in common use? *A.* No." The court corrected such finding by " striking out the answer, 'No,' to such question, as against the uncontradicted evidence in the case." Otherwise, the court refused the motion of the defendant to correct the verdict or grant a new trial. Upon such verdict so amended by the court, judgment for the plaintiff was ordered for the amount stated, with costs, and from the judgment so entered accordingly the defendant brings this appeal.

The log deck mentioned in the special verdict is described by counsel for the plaintiff substantially as follows: In the defendant's sawmill there was a large double deck, with a circular saw on one side and a band saw on the other side. The logs were drawn by an endless chain from the water, up and along a trough, into the mill, to a point between and opposite the log deck on the side of the band saw, as well as the log deck on the side of the circular saw, where the plaintiff worked. The logs were thrown out of the trough onto such decks by an eccentric operated by steam, after being brought into the mill by the endless chain. The deck on the side of the circular saw was composed of a heavy plank floor, running on a level in a direction parallel with the trough where the logs came up, and parallel with the carriage way along which the carriage runs which carries the logs to the saw. Such log deck declined or slanted down from the trough to the carriage way, which was thirteen feet in length at the point nearest the saw and sawyer, and was divided into three slants, of varying grades or declines. The first two feet and seven and three-fourths inches from the trough there was a drop of five inches (the defendant's witness testified, seven and three-fourths inches). The second decline was eight feet six inches long, with a drop of seven inches as shown by the plaintiff's witness (and five and one-fourth inches as shown by the defendant's witness). There was a space of twenty-one or twenty-two inches near the carriage way which was comparatively level, having a slight decline back from the carriage way towards the trough of one eighth of an inch (defendant's witness testified, about one inch). There were three skids on the deck running from the log trough to the carriage way, raised about six inches above the platform of the deck. The two nearest the saw and sawyer were made of T rails (railroad iron) bent to correspond to the several slants of the deck, and were round and smooth on the top. The one nearest

the sawyer was three feet ten inches from the bumper, and the other was eight feet and eleven inches further from the bumper. The third skid was of wood, with strap iron on top, and that also conformed in shape to the slant of the deck, and was six feet and three inches still further from the bumper. There was a square hole through the deck floor between the two railroad iron skids, about three feet square, for the bark to fall or be put through. There was a steam "nigger" located between the two railroad iron skids, used to put the logs from the skids onto the saw carriage, and of great power and rapidity of action, which was also used to turn the logs on the carriage when necessary, and was under the control of and operated by the sawyer. The nigger operated in a slot or opening in the deck from below, running from the carriage way back three or four feet toward the trough. When in operation it was lowered below the deck, and the top end carried back three or four feet from the carriage, to a point behind the log sought to be put on the carriage, and it was then raised up and pressed forward by steam power towards the carriage, and so forced the log onto the carriage. There were no other stops of any kind on defendant's log deck to prevent the logs, when thrown by the eccentric from the log trough onto the deck, from rolling or sliding clear down to or upon the carriage way except the depressions mentioned, and the nigger, when it happened to be up and in use, but it was not used for stopping the logs, its use being only for putting them on the carriage and turning them afterwards. To enable the deck hand to handle the logs or to keep control of them, it was usual to allow a few logs to remain on the skids, so that the logs from the trough, when thrown by the eccentric, would crowd against them, and be stopped and straightened preparatory to being put down by the deck hand to a place on the skids where the nigger could reach them and place them on the carriage. Only the smaller

logs were run over the deck on the side of the circular saw. The logs sawed during the day and a half while the plaintiff worked in the mill were from three to sixteen inches in diameter. Some of the logs were old, and some were new. The old logs had lost their bark considerably, and were smooth. During the day and a half the plaintiff worked there, he handled 1,850 logs, or about 130 logs per hour. The year before there had been little spikes of iron in the skid next to the sawyer, about two inches high, to prevent logs from sliding onto the carriage way. After the accident there were notches cut in the iron skid next to the sawyer for the same purpose — to prevent the logs from slipping. A man was necessarily employed on the log deck to stop the logs from coming down too far and too fast, and to straighten them and place one at a time down near enough to the carriage, so that the nigger could reach it and put it on the carriage. The proper place to put the log was at the slight turn or change of decline of the skid back towards the trough about two feet from the carriage, called by some witnesses the " depression," and denominated by the defendant's counsel as the "saddle." The proper time to place the log in position was when the carriage came back to that place for the log, so that there would be no delay in getting it with the nigger. The proper place for the deck man to stand and do his work was at the end of the log furthest from the sawyer.

In describing the accident the plaintiff's counsel states, in effect, that after working a day and a half, and handling 1,850 logs, the plaintiff undertook to handle a small, smooth, slippery log, standing at the end furthest from the sawyer, and was trying to get it down in proper time to be put upon the carriage; that the end of the log opposite the plaintiff, or nearest the saw, slipped over onto the carriage way; that the carriage, as it came back from the saw, caught the log and threw it against the plaintiff, and injured his leg so as

to make amputation necessary; that the plaintiff saw the carriage coming as the log was sliding over into the carriage way, and tried to stop it, but failed.

The complaint, among other things, alleges, in effect, that the log the plaintiff was attempting to handle at the time of the injury was without bark, and the first one in that condition which he had occasion to move from the log deck to the lower end of the skids; that the plaintiff did not know, and was not informed or warned in advance, that logs without bark had a tendency to slide in the manner described, nor the resulting danger. The general denial in the answer put such allegations in issue. As indicated, the jury determined that issue in favor of the defendant, and found (8) that the log which caused the plaintiff's injury was not a smooth one, with the bark off, but a new one, with the bark on.

The only breaches of duty or negligence of the defendant alleged in the complaint were the failure of the defendant to furnish a reasonably safe place in which the plaintiff was required to do his work, in that such skids were "unprovided with any stops or barriers to prevent logs from rolling or slipping too far while the carriage was in motion, whereas each skid should have had in its upper edge or surface, at and near the lower end thereof, curved depressions or indentations, or some other suitable and sufficient barriers to hold firmly and steadily logs in waiting and in readiness to be rolled upon the log carriage;" and, secondly, the failure of the defendant to instruct and warn the plaintiff of the tendency and liability of slippery logs, without bark, to slide along the skids, beyond the ends thereof, into the space provided for the passage of the saw carriage, from the mere force of gravity, and without any effort at rolling them, and failed to inform the plaintiff of the risks and dangers of the work.

The answer put those allegations in issue, and also the

Sladky vs. Marinette Lumber Co.

allegation of the complaint that the plaintiff was free from contributory negligence.

The defendant having requested a special verdict, the court was required by the statute to prepare such verdict "in the form of questions, in writing, relating *only to material issues of fact and admitting a direct answer*," and to which the jury were required to make answer in writing. Sec. 2858, Stats. 1898. That statute has very frequently been construed "to limit such questions to such facts as are controverted and put in issue by the pleadings, or, at most, to such as might properly have been put in issue by the pleadings,"— that is to say, "issuable facts, in contradistinction to mere evidence." *Davis v. Farmington*, 42 Wis. 431; *Eberhardt v. Sanger*, 51 Wis. 74–77, and cases there cited; *Heddles v. C. & N. W. R. Co.* 74 Wis. 257, 258, and cases there cited; *Montreal River L. Co. v. Mihills*, 80 Wis. 551–554, and cases there cited; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 362; *Bigelow v. Danielson*, 102 Wis. 473. True, it is said in those cases that the form of the verdict is very much in the discretion of the trial court, but the facts submitted should be limited as indicated. Here the questions submitted were mostly in total disregard of such limitations. Several of the questions so submitted relate wholly to evidentiary facts.

The first question submitted to the jury is this: "Was the defendant guilty of negligence in *allowing* plaintiff to work upon said log deck?" The plaintiff was twenty-six years of age. He had worked in mills and among saw-logs for eight years. There is no pretense that he was not a man of ordinary intelligence. He had, for two or three weeks before he commenced work, been urging the defendant to allow him to go to work in the mill. He saw what the work upon the log deck was, before he commenced, and had been engaged in such work for a day and a half before such injury. It is difficult to perceive how negligence could

be predicated upon the mere fact of "allowing" the plaintiff to go to work on the log deck. No such issue was raised by the pleadings, nor was it an issuable fact. It may have had some remote bearing upon the questions in issue,— whether the log deck was dangerous, and whether the plaintiff was instructed or warned by the defendant of the dangerous character of the work before he commenced; but, as indicated, those facts could only be properly submitted by direct questions admitting of direct answers.

But the trial court took a different view of the subject, and so, after reading the question, said to the jury: "This question embraces most of the principal questions in this case, although the following questions call upon you to answer specifically as to certain other facts which are to a greater or less extent included in this first question. This first question embraces the question as to whether or not the defendant's log deck was a reasonably safe one; also, the question as to whether or not the plaintiff was ignorant of this work to which he was put,— of rolling on logs,— and should have been instructed by the defendant." And again, after instructing the jury generally and at length as to the duty of the master, and, among other things, to the the effect that the defendant was not liable in damages for an error in judgment in selecting one kind of machinery or appliance, on proof that another method or appliance was better or safer, "when both methods or appliances" were "in common use,"— the jury were told that the question for them to determine in answering that "first question is: Was this log deck a reasonably safe place in which the plaintiff was to work? *Was it in common use?* Was it reasonably safe?" And then, after instructing the jury generally on the subject of negligence and ordinary care, and promising further instructions upon the duty of the employer to inform and instruct the servant, the jury were told to consider the evidence carefully,—"the construction

of the log deck, and whether or not it was one of a kind in common use, whether it was reasonably safe; the knowledge which the plaintiff had of that sort of business, or his lack of knowledge; whether or not he exercised ordinary care and prudence himself in handling the logs,"— and then determine from all the circumstances " whether or not the defendant was guilty of negligence by allowing the plaintiff to work upon said log deck." Thus the illegitimate question so submitted was made by the charge, contrary to the ruling of this court, to cover almost everything that could have been covered by a general verdict. *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 362. Such submission and such general charge were well calculated to defeat the very object of a special verdict, and were contrary to the spirit, if not the express ruling, of this court in *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215.

Under the charge of the court, most of the other questions submitted to the jury were, respectively, mere subdivisions of the first question so submitted. And yet the trial court, on motion to correct the verdict, refused to set aside the answer of the jury to that first question, and " ordered that said motion, as to the fourth question, to wit, ' Were log decks with appliances substantially the same as defendant's *in common use?* ' be granted, to the extent of striking out the answer, ' No,' to such question, *as against the uncontradicted evidence in the case.*" If the answer of the jury to that fourth question, to the effect that log decks with appliances substantially the same as defendant's were not in common use, was " against the uncontradicted evidence in the case " (that is to say, if the " uncontradicted evidence in the case " is to the effect that such log decks were in common use), then the court should have set aside the answer to the first question, since, under the charge of the court, it may, like their answer to the fourth question, have been based solely on the theory that such appliances were not in common use. The

same is true as to the fifth, sixth, and tenth questions, respectively, since, under the instructions of the court, the jury were at liberty to answer each of those questions, as they did, on the sole theory that such appliances were not in common use.

It is well settled in this court that "the test of negligence in such a case is the presence or absence of that degree of care which ordinarily prudent persons are accustomed to observe about the same or similar affairs in similar circumstances." *Guinard v. Knapp-Stout & Co. Company,* 95 Wis. 483; *Innes v. Milwaukee,* 96 Wis. 170–174; *Prybilski v. N. W. C. R. Co.* 98 Wis. 413, 416.

There is another defect in this verdict, bearing upon the question of instruction and warning. The complaint alleges, in effect, that the plaintiff "was ignorant of the risks or hazards attending" such employment, "as the defendant well knew when it set him at work." Such allegations were put in issue by the answer. The jury found that the plaintiff did not tell the defendant's agent at the time of his employment, nor before his injury, that he had done such work before, and that the defendant was bound to inform the plaintiff of the dangerous character of such work. But there is no finding to the effect that the plaintiff was ignorant of the risks or hazards attending such employment,— much less, that the defendant had knowledge of such ignorance. Those questions were left, therefore, undetermined. Certainly the defendant was not negligent for failure to instruct or warn the plaintiff, unless it knew or ought to have known that such warning or instruction was necessary. *Klochinski v. Shores L. Co.* 93 Wis. 417; *Deisenrieter v. Kraus-M. M. Co.* 97 Wis. 279. Under the charge of the court, the jury were at liberty to base their answer to the last of those questions upon the plaintiff's want of age, knowledge, experience, or comprehension.

It is well settled that "an employee of mature years, even

though inexperienced and uninstructed in the particular business, will be presumed to have known and assumed the risk incident to obvious defects or dangers, although they existed in consequence of the negligence or default of the employer." *Hazen v. West Superior L. Co.* 91 Wis. 208; *Jones v. Sutherland,* 91 Wis. 587; *Erdman v. Illinois S. Co.* 95 Wis. 6, 11; *Larsson v. McClure,* 95 Wis. 533; *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27; *Powell v. Ashland I. & S. Co.* 98 Wis. 35; *Dahlke v. Illinois S. Co.* 100 Wis. 431; *Dugal v. Chippewa Falls,* 101 Wis. 533. It is true that in charging the jury upon that question the court said that "where a defect or danger is open or obvious to a person of ordinary intelligence and judgment, although it exists in consequence of the negligence or default of the employer, knowledge of it on the part of the employee of mature years will be presumed." But the court virtually took from the jury the question of the assumption of risk, by charging them in the same connection as follows: "Where the danger is open and obvious, and the servant is of sufficient age and intelligence, and has sufficient knowledge, to comprehend danger, *then he assumes the risk.*" And again: "Where a master neglects to instruct a servant of that character in respect to the dangers of his employment, the servant cannot be held to have assumed the risk." These instructions were to the effect that, even if the danger was "open and obvious," yet the plaintiff did not assume the risk, unless the jury should be of the opinion that he was of sufficient age, and had sufficient knowledge and intelligence, to comprehend the danger, nor unless the defendant had instructed him in respect to the dangers of his employment. And yet the jury did not find, and were not asked to find, that the defendant knew that the plaintiff was in need of instruction or warning. The question of contributory negligence was virtually submitted to the jury without instruction, and in such a way as to authorize them to find for the plaintiff if "he

handled the logs as well as he knew how to," and was not negligent for not knowing better.    The questions of the assumption of risk and contributory negligence are not thus to be ignored, nor summarily disposed of.

It is admitted that that the plaintiff was twenty-six years of age at the time of the injury; that he began working about sawmills eight years before, principally upon the outside in the summer, and in the lumber woods in the winter; that he so worked at Garden Bay, Michigan, for five summers and winters; that during the last summer he was there he worked two months at the lath mill,— inside the mill,— pulling bolts through the lath machine; that each of such five winters at Garden Bay he worked in the woods, swamping and rolling logs with a cant hook on and off skids and sleighs (the skids at times being level, and at other times being more or less inclined or declined, and covered with snow and ice); that he worked the same way for three summers and winters at the defendant's mill at Marinette (the first summer in the yard, and the other two summers inside the mill); the first summer taking edgings from the edger and throwing them upon the slasher; that the second summer he worked in front of the gang saws, chopping the corners from the cants and helping to move them with a peevy, or lumberman's cant hook, having a metal-socket pick, into place for sawing; that during the three winters prior to his injury he worked in the woods, swamping and rolling logs with a cant hook on and off skids and sleighs, and for a short time assisted in loading logs from skids onto steam cars, using a cant hook in rolling and keeping them straight as they were being loaded; that for two or three weeks before the injury he sought work from the defendant inside of its mill; that finally the defendant's foreman showed him the log deck, where there was a man rolling logs, and asked the plaintiff if he ever rolled logs with a cant hook, and he said, "Yes, but not onto a saw carriage;" that the plaintiff then

took the cant hook and started to roll the logs down; that he knew the foreman meant for him to roll logs from the log deck to the carriage, and would have known that without having been shown.

With his age and experience, it is idle to say that the plaintiff did not know that, when logs were thrown by the eccentric from the log trough onto the log deck, they would roll down on the skids, at least to the first drop mentioned, and that, if they were started down the skids from such first drop, they would roll down, at least to the second drop, where the skids descended back towards the trough, with the liability of going to the end of the skids and against the carriage, if it was there, and over the end of the skids into the path of the carriage, if it was not there. Such would necessarily be the result from the condition of the skids and the force of gravity. The condition of the skids was open and obvious to the plaintiff, and such as he was bound to recognize, as well as the force of gravity. There was nothing uncertain, obscure, or complex in the situation. As found by the trial court, it appears from the uncontradicted evidence that the defendant's log deck, with its appliances, was substantially the same as those in common use. Such being the conditions, we must hold, as a matter of law, that the plaintiff assumed the risk. See cases cited in *Helmke v. Thilmany, ante,* p. 216, and *Renne v. U. S. L. Co., post,* p. 305.

It is undisputed that there was a proper, usual, and safe way for the plaintiff to do such work. His proper place was at the end of the log furthest from the sawyer. The proper time for him to get the log down to the depression nearest the foot of the skids, from which it could be taken by the nigger and loaded onto the carriage, was when the carriage was back from the saw and in front of the skids. Had the plaintiff observed such usual mode of doing the work, it would have been impossible for the log to roll or slide off the skids, since the carriage would have been there

to prevent it. Having failed to get the log down to such depression nearest the foot of the skids, while the carriage was in front of them, nor until after the carriage had passed back towards the saw and beyond the skids, it was the plaintiff's duty to wait until the carriage returned in front of the skids before rolling the log down on that depression. The plaintiff voluntarily chose the unusual and unsafe way of doing the work, instead of the usual and safe way, and hence was guilty of contributory negligence. *Larson v. Knapp, Stout & Co. Company,* 98 Wis. 178; *Rysdorp v. George Pankratz L. Co.* 95 Wis. 622, 626; *Welsh v. Argyle,* 89 Wis. 649; *Lockwood v. C. & N. W. R. Co.* 55 Wis. 66.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.