Olwell v. Skobis, 126 Wis. 308.

OLWELL, Respondent, vs. SKOBIS and another, Appellants.

*October 25—December 12, 1905.*

*Appeal: Questions considered: Negligence: Personal injuries: Evidence: Joint tort-feasors: Dismissal as to one defendant: Special verdict: Specific questions: Trial: Order of proof: Discretion: Instructions to jury: Ordinary care: Proximate cause: Excessive damages.*

'1. The supreme court may properly omit to consider errors assigned in appellant's brief but not relied upon for reversal.

2. In an action for an injury to plaintiff's eye, alleged to have been caused by defendant's negligence, it was not error to permit the attending oculist to testify to the details of his treatment,

tending to prove pain and suffering, although the answer admitted the injury and that it necessitated long and painful treatment.

3. An action for personal injury was brought within a year against three persons jointly. The complaint was amended, more than a year after the accident, so as to allege that the injury was caused by negligence of two of the defendants, and the action was dismissed as to the third. Notice of the injury in compliance with subd. 5, sec. 4222, Stats. 1898, had been given, within the year, to said two defendants. *Held*, that there was no error in permitting the amendment and dismissal. Defendants were not thereby deprived of the right to invoke the one-year statute of limitations (subd. 5, sec. 4222, Stats. 1898).

4. In an action for injury to plaintiff's eye caused by a flying chip from iron which defendants were chiseling near the door of the office in which plaintiff was employed, it being a question at issue under the pleadings whether defendants did the work "in the usual safe and workmanlike manner," it was error not to submit such issue to the jury by suitable specific questions or instruction, the court's attention having been called thereto by requests of counsel, even though the questions and instruction so requested were defective or faulty. The question so at issue was of more significance than a mere evidentiary circumstance bearing upon the question of defendants' negligence; and the mere submission of a general question as to their want of ordinary care was not sufficient.

5. No request having been made for submission of the specific question whether defendants placed or used a board or shield to protect the doorway from chips and cuttings of the iron, the failure to submit that question in the special verdict was not error, although negligence in failing to provide such a shield was alleged and denied.

6. Upon the question whether any such board or shield was used, it was not error to allow a witness for plaintiff to testify that there was nothing interposed between the flying chips and the front of the building.

7. Although the absence of any board or shield was alleged in the complaint, and it would have been more proper for plaintiff to make proof of such absence before resting her case, yet there was no abuse of discretion in permitting her, on rebuttal, to testify that at the time of the accident there was no board in front of the door such as defendants' witnesses testified they had placed there—especially as the court had erroneously excluded the testimony of plaintiff's first witness on that question.

8. The question whether the work of chipping cast iron with a cold chisel and hammer is a dangerous one is not a question upon which expert testimony is admissible.

9. An instruction giving as the test of ordinary care "the care which the great majority of men would have used under the same or similar circumstances," is *held*, though perhaps open to criticism, not to have been misleading.

10. An instruction giving as a test for determining whether defendants' alleged negligence was the proximate cause of the injury, the question whether an injury to another ought, in the light of the attending circumstances, to have reasonably been foreseen or expected as "the natural result" of the act or omission complained of, is *held* to include the idea of "natural and probable result;" but it is suggested that the approved definition, using the words last quoted, should not be departed from by trial courts.

11. For injuries to the eye of an unmarried woman employed as a clerk, necessitating long and painful treatment, three operations, and finally the removal of the eye, an award of $12,000 is *held* excessive, and it is suggested that any sum exceeding $6,000 would be deemed too large.

Appeal from a judgment of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Reversed.*

This action was commenced August 6, 1902, against *Frank Skobis, Joseph Skobis,* and one Frederick Pabst to recover damages for the loss of an eye by reason of the alleged negligence of the defendants in the chipping of iron with a chisel in front of the office in which the plaintiff was employed April 5, 1902, and which occurred just after the plaintiff came out of the door of said office on her way to the public street. These defendants separately answered September 12, 1902, and the defendant Frederick Pabst separately answered September 29, 1902. Upon motion of the plaintiff, based upon a proposed amended complaint duly verified June 3, 1903, it was ordered by the court June 20, 1903, that the action be and the same was thereby dismissed and discontinued as to the defendant Frederick Pabst, and that the summons and complaint be and they each were thereby amended by striking therefrom the name of said Pabst, and that the plaintiff's mo-

tion to amend her complaint as therein prayed be granted; that such proposed amended complaint on file therein be and stand as the plaintiff's complaint in this action with service as of June 3, 1903; that the defendants *Frank* and *Joseph Skobis* make answer thereto as therein ordered; and that the action proceed with the same force and effect as though said Pabst had never been made a party.

Such amended complaint alleged, in effect, the copartnership of the defendants, *Frank* and *Joseph Skobis;* the location of the Pabst office and store building at the northwest corner of East Water and Wisconsin streets in Milwaukee; that at the southwest corner and upon the first floor thereof was an office room fronting and having an entrance thereto on Wisconsin street, occupied by Coxe Bros. & Co., a corporation, under a lease from Pabst Brewing Company, running from April 1, 1897, to May 1, 1902, and used by them at all times for office purposes in doing and carrying on the business of wholesale and retail coal dealers, and at all times during the usual and customary office hours they and their employees, agents, clerks, etc., occupied said office; that there was but one means of entrance and exit thereto to April 5, 1902, and for some time prior thereto, and that was through the door opening from Wisconsin street front, which facts were known to the defendants on April 5, 1902, and for some time prior thereto; that on April 5, 1902, and for three years prior thereto, the plaintiff was in the employ of Coxe Bros. & Co. as their amanuensis, clerk, and cashier, and as such necessarily occupied said office during customary business hours; that prior to April 5, 1902, the brewing company began certain alterations and repairs in and about said office and premises—among other things, a remodeling of the front of the same,—and so contracted with the defendants to do a portion of such work, and the defendants were engaged thereon April 5, 1902, and had been for some days prior thereto; that the performance of their contract with the brewing company con-

templated and necessitated the removal, erection, and construction of certain steel and iron work at the front of said office around and about the door thereof, and a removal by the defendants of a portion of the iron construction of the building and sidewalk, and that the doing of the same in the manner in which the defendants did and performed the same was of such a character as to be attended, to the knowledge of the defendants, with danger and risk to the representatives, clerks, agents, and employees of Coxe Bros. & Co. occupying said office, and was of such a character, to the knowledge of the defendants, that the doing of the same was likely to produce injury to the said representatives, agents, and employees, of whom the plaintiff was one; that the defendants owed to Coxe Bros. & Co. and to each of their clerks, agents, and employees, of whom the plaintiff was one, using said office the duty of warning them and her of the danger attending the doing of said work, so as to guard against any danger; that the defendants also owed to the plaintiff the duty of carrying on said repairs and work and the cutting or chipping of all iron to be by them done in the usual safe and workmanlike manner by directing the chips and cuttings from such iron away from the door of said premises and by placing a board or shield near thereto in such a manner as to protect this plaintiff while passing through said door while the cutting or chiseling of all iron near thereto was in progress, all of which the defendants neglected and negligently failed to do; that a portion of said work was performed by chipping and cutting with a chisel a certain portion of the iron construction of the building and sidewalk near to and directly in front of the door of said office; that the defendants were negligent in the chiseling, cutting, and removing of said iron, in that they failed to do the same in the usual safe and workmanlike manner, and in that they caused said iron to be removed in such a manner that the cuttings and chippings therefrom were thrown toward and against the door of said office and in such a manner as to

imperil the safety of a person using the same, and in that they failed to use a board or shield to guard or protect the said doorway from such chippings and cuttings, so as to avoid accident and injury in doing said work, which could have been easily avoided, and in that they failed to warn this plaintiff of the danger of using said door or passing in or out through the same while such work was in progress; that about 9 o'clock in the forenoon of April 5, 1902, the plaintiff had occasion to pass through said door in the performance of the duties of her said employment, while the said work was being done, having received no warning of the danger thereof and being wholly ignorant of any danger attending the doing of said work and of passing through such door, and while so doing was struck by a chip from such iron work caused to be cut therefrom by the defendants, causing an injury to the eye of the plaintiff necessitating long and painful treatment, three operations thereon, and its removal; that the said injury was caused wholly by reason of the aforesaid negligent acts and omissions of the defendants; that the plaintiff is skilled as an amanuensis and bookkeeper and her ability to obtain future employment is impaired by such injury; that her earning ability and ability to work with ease and skill is thereby decreased and her sight and powers of observation are thereby largely diminished, and her personal appearance permanently marred, and her health has been thereby impaired, and she has suffered much physical pain and will continue to suffer great mental pain, sorrow, and anguish, and has been obliged to expend considerable sums of money for medicine, medical and surgical treatment, and hospital treatment, nursing, and care.

The answer specifically admits a large number of the allegations of such amended complaint, including an admission that on April 5, 1902, the plaintiff at about the hour of 9 o'clock a. m. passed from the inside of said store or office building so occupied by said Coxe Bros. & Co. to the outside

thereof through the doorway of the Wisconsin street entrance to said office or storeroom, while defendants were doing the work of chipping said iron beam or frame work in said sidewalk, as aforesaid, and while so doing was struck in one of her eyes by a chip from such iron work cut from such iron work by said defendants, causing an injury to said eye and necessitating long and painful treatment, three operations thereon, and the removal of said eye; but defendants deny that such injury was caused by negligence, omission, or failure of duty on the part of said defendants or either of them; and the defendants, further answering, deny each and every allegation in said amended complaint contained not expressly admitted.

At the close of the trial the jury returned a special verdict; the first question being answered by the court and the other four by the jury, to the effect: (1) That the plaintiff on April 5, 1902, while passing or attempting to pass through the entrance of the office of Coxe Bros. & Co. on Wisconsin street in said city, was injured in her left eye by a chip of iron, which injury necessitated the removal of her said eye. (2) That the employees of the defendants were guilty of a want of ordinary care in carrying on the work of chiseling iron in front of said offices. (3) That the want of such care was the proximate cause of the injury. (4) That the plaintiff was not guilty of a want of ordinary care which contributed to the injury. (5) That they assessed the damages suffered by the plaintiff on account of the injury referred to at $12,000. The court thereupon denied the several motions of the defendants to change the verdict and for a judgment dismissing the action and to set aside the verdict and grant a new trial, and thereupon granted the plaintiff's motion for judgment upon the verdict in her favor for the amount stated, with costs, and ordered judgment accordingly. From the judgment so entered the defendants appeal.

*Joseph B. Doe,* attorney, and *C. H. Van Alstine,* of counsel, for the appellants.

For the respondent there was a brief by *W. H. Timlin* and *Henry J. Killilea,* and oral argument by *Mr. Timlin, Mr. Killilea,* and *Mr. L. A. Olwell.*

CASSODAY, C. J.   Forty-two errors are assigned, and one of these has seven subdivisions.   On the argument it seemed to be conceded that several of them, standing alone, were without merit.   It has been held by a court of high authority that:

"When the assignments of error are very numerous, it is practically found necessary to consider but a few of them." *Grayson v. Lynch,* 163 U. S. 468, 16 Sup. Ct. 1064.

The rule of this court requires the brief of the appellant to state "the several errors *relied* upon for reversal."   Rule IX. This court should not be called upon to consider and determine exceptions not relied upon by counsel.   The failure to mention assignments of error which are obviously without merit is certainly justifiable.   Several of such errors relate to the admission of testimony as to the situation of the *locus in quo* and the circumstances under which the plaintiff was injured. As stated in the appellant's brief, "the main controversy between the parties was whether or not the employees of the defendants were negligent or failed to exercise ordinary care in smoothing the water lip with their cold chisels."   That, of course, was a question of fact to be determined by the jury, under proper instructions from the court.   Some of such testimony related to the manner of doing such business by the employees of the defendants after the accident, but during the same forenoon on which it occurred.   The evidence, however, tended to prove that such manner of doing the business was the same after the accident as before.   We perceive no error in allowing the attending oculist to testify to the details of his treatment, tending to prove pain and suffering, nor in refusing a nonsuit, nor in refusing to direct a verdict in favor of the defendants, nor in refusing to change the answer of the jury to the second question submitted from the affirmative to the negative, whereby they found that the employees of the

defendants were guilty of a want of ordinary care in carrying on the work of chiseling iron in front of the office wherein the plaintiff was employed.     There are some assignments of error calling for special consideration.

1. Error is assigned because the court, on the application of the plaintiff and showing made, allowed the summons and complaint to be amended by dismissing the action as against Frederick Pabst and allowing the proposed amended complaint, then on file, to stand as the plaintiff's complaint in the action and requiring these defendants to answer the same as stated.     That occurred more than fifteen months prior to the trial, so there was no prejudice to the defendants by reason of the time of making the amendment.     The particular objection made is that the action was originally brought against the three persons named jointly, alleging joint liability, and hence that no amendment of the complaint could subsequently be allowed, over the objection of these defendants, which would deprive them of the right to invoke the one-year statute of limitation.     Subd. 5, sec. 4222, Stats. 1898.     But, as indicated, the action was commenced within the year, and the written notice of the injury was given to these defendants April 3, 1903, which was within "one year after the happening of the event causing such damage."     That notice was to the effect that the negligence of these defendants caused the injury.     No objection is made to the form of the notice.     The objection is that the original complaint alleged a joint tort against the then three defendants, and hence could not be changed by amendment so as only to allege a tort committed by these two defendants.     But it is well settled and elementary that:

"Where a tortious breach of duty is committed by two or more persons, each contributing to the injury as a joint tortfeasor, the plaintiff may at his election sue any one of them separately, or he may sue all or any number of them jointly." 15 Ency. Pl. & Pr. 557, citing numerous adjudications.

See *Ellis v. Esson,* 50 Wis. 138, 6 N. W. 518; *Pogel v. Meilke,* 60 Wis. 248, 18 N. W. 927; *Bishop v. McGillis,* 82 Wis. 120, 126, 51 N. W. 1075; *Stolze v. Torrison,* 118 Wis. 315, 321, 95 N. W. 114. In one of the cases cited by counsel for the defendant it was held that:

"If two defendants be sued jointly for a tort, and the evidence is not sufficient to hold one, there may be a discontinuance as to that one, and the trial may proceed as to the other." *Dutton v. Lansdowne,* 198 Pa. St. 563, 48 Atl. 494.

Besides, such statute of limitation was not pleaded.

2. The important question in the case is whether the court improperly refused to submit to the jury, by suitable questions or instructions, matters of fact put in issue by the pleadings. As indicated, the complaint alleged, in effect, that the defendants neglected to perform the duty they owed to the plaintiff in "carrying on said repairs and work and the cutting or chipping of all iron to be by them done, in the *usual safe and workmanlike manner,* by directing the chips and cuttings from such iron away from the door of said premises, and by placing a board or shield near thereto in such a manner as to protect this plaintiff while passing through said door while the cutting and chiseling of all iron near thereto was in progress." And again, that the "defendants were negligent in the chiseling, cutting, and removing of said iron, in that they failed to do the same in the *usual safe and workmanlike manner,* and in that they caused the said iron to be removed in such a manner that the cuttings and chippings therefrom were thrown toward and against the door of said office, and in such a manner as to imperil the safety of a person using the same, in that they failed to use a board or shield to guard or protect the said doorway from such chippings and cuttings, so as to avoid accident and injury in the doing of said work," and in that they failed to warn the plaintiff of such danger. Such several allegations of the amended complaint were put in issue by the denials in the answer. Certainly there was

nothing in the special verdict submitted requiring the jury to determine whether such cutting and chipping of iron was done by the defendants "in the usual safe and workmanlike manner" thus alleged. Nor was there anything in the charge of the court requiring the jury to consider, much less determine, that question in the special verdict so submitted.

The court refused to submit to the jury a question as to whether "the work of *smoothing the iron water rib*" was done by the defendants, "in all respects, in the usual and ordinary way generally pursued in doing such work in like locations and under similar circumstances by workers in iron in Milwaukee and vicinity." Counsel for the plaintiff contend that the question so requested was defective, in that it limited the inquiry to the mere work of smoothing the iron water rib, and also limited the inquiry to the way generally pursued by workers in iron in *Milwaukee and vicinity*. There seems to be much force in the criticism. The true test is that degree of care which is ordinarily observed by men of ordinary care and prudence, or by men generally, engaged in the same or similar business, under the same or similar circumstances. *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671; *Rylander v. Laursen,* 124 Wis. 2, 102 N. W. 341. But the request called the attention of the court sharply to the subject. It was followed by another request, covering one of the issues thus made by the pleadings, which reads:

"In smoothing the iron water rib upon the north edge of the Hyatt light frame in front of the office room referred to, in the manner in which that work was done, did the employees of the defendants exercise such care as is generally and usually exercised under similar circumstances by persons in the same line of business, engaged in doing similar work?"

This request is not as concise as it might have been, but it covered one of the issues in the case. Of course, as often said by this court, the particular form of the verdict in all such cases is very much in the discretion of the trial court. The

statute requires the trial court, when requested in time, as here, to "direct the jury to find a special verdict . . . in the form of questions, in writing, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing." Sec. 2858, Stats. 1898. That statute has frequently been construed "to limit such questions to such facts as are controverted and put in issue by the pleadings, or, at most, to such as might properly have been put in issue by the pleadings." *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 362, 77 N. W. 714; *Zimmer v. Fox River V. E. R. Co.* 118 Wis. 614, 618, 95 N. W. 957, and cases there cited. This court has frequently held that, even where the questions submitted for a special verdict in an action for injuries by negligence cover in a general way all phases of the defendant's negligence, yet under the provisions of the statute cited the court should submit to the jury the particular physical facts directly put in issue by the pleadings when properly requested so to do. *Lee v. C., St. P., M. & O. R. Co., supra; Bigelow v. Danielson,* 102 Wis. 470, 473, 78 N. W. 599. As said by Mr. Justice BARDEEN in one of the cases cited:

"A special verdict is that by which the jury find the facts only, leaving the judgment to the court. . . . Too much emphasis cannot be laid upon this requirement. . . . The true office of a special verdict is to single out the issuable facts of the case upon which the defendant's obligation rests. The questions should be so framed as to present, in as clear and sharp a way as possible, the real issues concerning which proof is offered, so that, when determined by the jury, the court may apply the law and render judgment accordingly." *Bigelow v. Danielson, supra.*

A general verdict would have covered all phases of the defendant's negligence, but the defendants had the right, under the statute cited, to a special verdict. But, as indicated in the cases cited, a special verdict which is but little more than a general verdict in sections is not in conformity to the requirements of the statute. *Lee v. C., St. P., M. & O. R. Co.,*

*supra; Bigelow v. Danielson, supra; Sladky v. Marinette L. Co.* 107 Wis. 250, 259, 83 N. W. 514. In a late case, where the evidence tended to show that the condition of the highway at the time of the accident was owing to an extraordinary flow of water, Mr. Justice MARSHALL said:

"That was an important feature of the case. The fact in regard thereto was in issue by the pleadings. It was one of more significance than a mere evidentiary circumstance bearing on the question of whether the highway was reasonably safe or not. It was, if it existed, one which the town authorities were, as a matter of law, not bound to provide against." *Schrunk v. St. Joseph,* 120 Wis. 223, 228, 229, 97 N. W. 946.

It was there held that as that question was put in issue by the pleadings it should have been submitted to the jury as a part of the special verdict. As held in that case, the question so at issue and which the court so refused to submit to the jury was "of more significance than a mere evidentiary circumstance bearing" upon the question of the defendant's negligence. Of course, this court has many times declared that such special verdict was not designed to elicit from the jury a mere abstract of the evidence, nor even a single evidentiary fact not so put in issue and material. *Cullen v. Hanisch,* 114 Wis. 24, 31, 89 N. W. 900; *Zimmer v. Fox River V. E. R. Co.* 118 Wis. 614, 617, 618, 95 N. W. 957.

Counsel for the defendant sought to have the question mentioned covered by the jury in an instruction to be given under the second question submitted, to the effect that if the defendants were carrying on the work "in the way that such work in like locations and under similar circumstances was usually and ordinarily carried on throughout the city of Milwaukee and vicinity generally, then the employees of the defendants were not guilty of any want of ordinary care in so carrying on such work, and although an injury did result to the plaintiff, yet, nevertheless, if you find that said employees of de-

fendants were carrying on the work in the usual and ordinary way of carrying on such work under similar circumstances, your answer to the second question will be no." While such instruction would have been defective in so far as it limited the inquiry to Milwaukee and vicinity, as already indicated, yet it served to call the attention of the court again to the question so at issue and not submitted to the jury. We must hold that the failure to submit such question to the jury was error.

3. True, the portion of the complaint above quoted alleges that the defendants were negligent in failing to place or use a board or shield to guard or protect the doorway of the office in which the plaintiff was so employed and the plaintiff from such chippings and cuttings; and such allegations of the complaint were put in issue by the answer. If such cutting and chipping was done negligently and not in the usual safe and workmanlike manner for doing such work, by reason of the absence of such board or shield, then, as indicated in the quotation from one of the cases cited, it was "of more significance than a mere evidentiary circumstance." Such physical fact, however, was not specifically submitted to the jury, and no request was made to have it so submitted. In the absence of such request we cannot say that there was error in failing to submit it. Nevertheless, the presence or absence of such board or shield was open to proof by the respective parties under the second and third questions of the special verdict so submitted to the jury. We perceive no error in allowing the plaintiff to prove by a witness who was there about the time in question, and while such cutting and chipping was going on, that he saw nothing "interposed between the flying chips and the front of the building," and that there was nothing. The plaintiff certainly had the right to prove the situation and the manner of doing the work at the time of the injury. But the principal ruling complained of in that regard is that

the plaintiff was allowed on rebuttal to testify that there was no board about six inches wide standing upon its edge across in front of the door and a foot or more south thereof. It certainly would have been more proper for the plaintiff to have made such proof before resting her case, since the absence of such board or shield was affirmatively alleged in the complaint. But the order of proof, from necessity, is always very much in the discretion of the trial court; and in making the ruling the trial judge remarked that he allowed the testimony "so far as this plaintiff is concerned, because she had not testified on that subject at all." Besides, the court had, on the defendants' objection, excluded a question put to the plaintiff's first witness, as to "whether there was at that time any board or other protection between the water lip and the door." Having erroneously excluded such testimony on the defendants' objection, there was some excuse for admitting such testimony on rebuttal. The burden of that issue was evidently on the plaintiff. The same is true as to the evidence of the service of notice of the plaintiff's claim of injury.

4. Error is assigned for permitting testimony to the effect that the business of chipping cast iron with a cold chisel and hammer is a "very dangerous" business or occupation. The ground for the objection is that it calls for opinion evidence in a matter not involving science, art, or skill, and therefore was not admissible. The general rule also "includes the evidence of common observers testifying to the results of their observation made at the time in regard to common appearances, facts, and conditions which cannot be reproduced and made palpable to a jury." 5 Ency. of Ev. 654; *Snyder v. W. U. R. Co.* 25 Wis. 60.

"The admission of expert testimony is based on the general ground that the witness is speaking of a matter concerning which he has peculiar means and sources of information not enjoyed by other persons engaged in other and different occupations." Lawson, Expert & Opin. Ev. (2d ed.) 239.

But the same author says:

"The opinion of an expert is inadmissible where the subject is one not of special skill or knowledge, but of general observation or experience, or which can be better answered by persons in another calling, or is upon a question which the court or jury can themselves decide on the facts." Page 238.

See 3 Wigmore, Ev. § 1951, giving a great variety of illustrations. Mr. Jones says:

"Clearly it is not the province of the expert to act as judge or jury. Hence all questions calling for his opinion should be so framed as not to call upon him to determine controverted questions of fact, or to pass upon the preponderance of testimony." 2 Jones, Ev. § 374; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 484, 72 N. W. 1124; *Green v. Ashland W. Co.* 101 Wis. 258, 270, 77 N. W. 722; *Daly v. Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Miles v. Stanke,* 114 Wis. 94, 89 N. W. 833; *Lyon v. Grand Rapids,* 121 Wis. 609, 619, 620, 99 N. W. 311.

The latest case on the subject in this court is *Lounsbury v. Davis,* 124 Wis. 432, 102 N. W. 941, 943, 944, where it is said by my Brother SIEBECKER that:

"It was proper for the witness to testify fully as to the manner in which the anchor was constructed, the quantity of stones that were piled thereon, to give a full description of the manner in which they were piled on and about the anchor, and of their displacement after the accident. But this is the limit to which the evidence could properly be permitted to go. This limitation was plainly transgressed in the foregoing inquiry, and the witness was called upon and permitted to give his opinion upon an ultimate issue in the case, which can only be resolved by the jury."

And he further quotes from one of the earlier cases above cited that:

"The rule is that experts are not to decide issues of fact; hence all questions calling for opinion evidence must be so framed as not to pass on the credibility of any other evidence in the case, else it will usurp the province of the jury and the court."

There are numerous cases where this court has held it to be reversible error for a witness to give his opinion that a public highway was unsafe or dangerous. Under the authorities cited we must hold that the question whether such cutting and chipping of the iron was dangerous was a question of fact for the jury.

5. Error is assigned because the court charged the jury that:

"If . . . you shall be satisfied by the preponderance . . . of all the evidence that the employees of the defendants, in carrying on the work of chiseling iron in front of the office in question, under the circumstances disclosed in this case, did not use the care which the great majority of men would have used under the same or similar circumstances, then your answer to this question will be yes; otherwise, it will be no."

The criticism is to the use of the words "the care which the great majority of men would have used," instead of saying "the care which the great majority of men ordinarily exercise;" citing *Nass v. Schulz,* 105 Wis. 146, 150, 81 N. W. 133. The true test of such care is stated above in somewhat different language. While the wording of the portion of the charge quoted may be open to criticism, yet it seems to have some sanction in decisions of this court; and we cannot believe that the jury were misled by it. *Olwell v. Milwaukee St. R. Co.* 92 Wis. 330, 334, 66 N. W. 362; *Boelter v. Ross L. Co.* 103 Wis. 324, 330, 79 N. W. 243; *Chase v. Blodgett M. Co.* 111 Wis. 655, 660, 87 N. W. 826. Upon such a delicate question it is always wise to adhere to the most approved statement of the law and thus avoid all criticism.

6. Error is assigned because the court charged the jury upon the question of proximate cause as follows:

"When we speak of the proximate cause of an injury, we mean not only the natural cause of the injury, but also such a cause as ought, under the attending circumstances, to be reasonably expected, by a person of ordinary intelligence and prudence, to produce injury to another. Or, in other words,

ought an injury to another, in the light of the attending circumstances, to have reasonably been foreseen or expected as the natural result of the act or omission complained of ?"

The claim is that the second portion of the charge thus quoted is erroneous in using the words "natural result," instead of saying the "natural and probable result." But we are constrained to hold that the language quoted does in substance include the words thus claimed to have been improperly omitted. The question thus presented is quite similar to the question presented in a recent case in this court. *Feldschneider v. C., M. & St. P. R. Co.* 122 Wis. 423, 430, 431, 99 N. W. 1034. In that case the words "natural and probable result" were both omitted from the charge; and, after quoting the approved rule from a former decision of this court, it was there said that:

"The ideas here expressed may doubtless be well expressed in other language, but no reason for material variation from this definition is perceived, and we cannot too strongly urge upon trial courts that it be substantially or literally followed in personal injury cases."

The same is true in the case at bar.

7. Error is assigned because the verdict is excessive. We are constrained to hold that the damages assessed by the jury are grossly excessive. As already indicated, this case must go back for a new trial by reason of errors mentioned. Nevertheless, it will be promotive of the ends of justice to suggest an amount which would not be deemed excessive upon substantially the same evidence as to damages as appears in this record. Such practice seems to have the sanction of this court. *Goodno v. Oshkosh,* 28 Wis. 300; *Patten v. C. & N. W. R. Co.* 32 Wis. 524, 536; *S. C.* 36 Wis. 413, 416; *Collins v. Janesville,* 107 Wis. 436, 438, 441, 83 N. W. 695; *S. C.* 111 Wis. 348, 358, 87 N. W. 241, 1087; *S. C.* 117 Wis. 415, 94 N. W. 309. Of course, there is no exact rule for estimating damages in such a case. Several cases in this court have been

collated in *Rueping v. C. & N. W. R. Co.* 123 Wis. 319, 325, 326, 101 N. W. 710. We also refer to cases in other jurisdictions where verdicts from $2,000 to $5,000 for the loss of an eye have been held not to be excessive. *Lemser v. St. Joseph F. Mfg. Co.* 70 Mo. App. 209; *East St. Louis v. Dougherty,* 74 Ill. App. 490; *Johnson v. Mo. Pac. R. Co.* 96 Mo. 340, 9 S. W. 790. In the case at bar we are constrained to hold that a verdict of more than $6,000 upon substantially the same evidence as to damages as in this record would be deemed to be excessive. There are no other questions calling for consideration.

*By the Court.*—The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded for a new trial.