TESCH, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Respondent.

*September 18—October 16, 1923.*

*Master and servant: Negligence of master: Failure to warn ser-
vant: When necessity exists for warning.*

1. A master cannot be held liable for an injury to his servant on
   the ground that he was negligent in not instructing or warn-
   ing the servant as to a danger incident to the employment, un-
   less he knew or ought to have known that such instruction or
   warning was necessary.
2. In an action to recover for personal injury sustained by a
   skilled bridge carpenter while engaged in the repair, in the
   usual method, of a short one-span railroad bridge by the
   insertion of two additional stringers between the rails, he
   having, in the course of the work, of his own motion and
   without the knowledge of others of the crew, assumed a po-
   sition of danger to do something not usual while the second
   stringer was being dumped in position, it is *held,* under the
   evidence, that there was no negligence in not giving further
   instruction or warning as to how the work should be done.

APPEAL from a judgment of the circuit court for Brown
county: HENRY GRAASS, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the defendant
dismissing the plaintiff's complaint.

*Sol. P. Huntington* of Green Bay, for the appellant.

For the respondent there was a brief by *Fairchild, North,
Parker & Bie* of Green Bay, and oral argument by *Walter
T. Bie.*

DOERFLER, J.    The plaintiff, a bridge carpenter, while
engaged by the defendant in the repair of a one-span bridge
used in interstate commerce, sustained injury to his left big
toe, and it is charged that the same was caused in whole
or in part by the negligence of the defendant.

At the time of the injury plaintiff, being thirty-three years
of age, had had a year and a half of experience in bridge
work as an employee of the defendant, and previous to

that time had considerable experience elsewhere. The bridge in question extended east and west, was about thirty feet in length, and the repairs consisted mainly in placing two additional stringers between the rails of the track on the bridge. The stringers, which were located to the east of the bridge, were about thirty feet long, eight inches high, sixteen inches wide, and each weighed approximately 2,000 pounds.

Before commencing the repairs the foreman instructed the crew to open up the bridge, pull out the ties far enough to clear the stringers, and to then run out the stringers and dump them. When the crew, including the plaintiff, had performed the preliminary work in accordance with the instructions and had shoved the ties out from under the north rail towards the south so that the northerly end of the ties was a distance of about eighteen inches north from the south rail, the ties being somewhat tilted so that the north end was higher than the south end, there was exposed between the north end of the ties and the north rail an open space of about three feet into which the stringers were to be dumped so that they would rest upon the abutments of the bridge.

The first stringer was placed upon a small pony truck called a dolly, having a platform about four feet long and sixteen inches wide, and two wheels operated on a single rail, and a handle used by the operator in propelling the truck and in dumping the stringer; and thereupon, when the stringer had been propelled to a proper position so that the center of the dolly had arrived at the center of the bridge, the operator, without giving a warning, dumped the stringer, suddenly releasing the handle in such a manner as to cause him to lose his balance and to be precipitated onto his hands and knees. The plaintiff testified that, when the first stringer had been dumped, the foreman made the statement that the work would not be done in that way

again. Such evidence was contradicted by the foreman and other members of the crew.

The second operation was in all respects performed in a manner similar to the first, but the plaintiff conceived the idea of walking along the stringers carrying a peavy, south of the south rail towards the west end of the bridge, intending, upon arriving at such west end, to assist with such peavy in the lowering of the stringer; and when the stringer was dumped it came in contact with several of the loosened ties, as the result whereof such ties were forced downward at the point of elevation, causing plaintiff's left foot to be pressed in between a tie and the rail, resulting in the injury complained of.

In repairing a one-span bridge like the one in the instant case the method pursued was the one usually and ordinarily resorted to. Two other methods were in vogue and used upon other bridges. On long, high bridges, where the ties cannot be removed, it is the custom to run the stringers out onto the bridge with the dolly, and ropes would then be fastened around the ends of the stringers, and members of the crew, by holding onto the ropes, would assist in the dumping and the moving of the stringer into the desired position. On certain other jobs, on bridges containing more than one span, members of the crew at each end of the stringer, with the aid of peavies, would assist in guiding the stringer while it was dumped from the dolly, so as to prevent the stringer from getting away. The method last referred to was not used by the defendant company on any job in which the plaintiff assisted prior to the happening of the injury, and the plaintiff testified that before that time he had knowledge of but one method, and that was the one referred to where the stringers were lowered in part with ropes.

The case was submitted to the jury on a special verdict, and the jury found in substance as follows: First, that the

plaintiff sustained his injury while repairing the bridge; second, that the defendant failed to exercise ordinary care in not giving proper instructions as to how the repair work should be done; third, that plaintiff's injury was caused in whole or in part by such failure to give proper instructions; fourth, that at the time of the injury the defendant company did not fail to exercise ordinary care by failing to give warning that the timber was about to be dumped; sixth, that it was not known or anticipated by the defendant's employees that plaintiff would go to the west end of the stringer to help guide the same while in the process of dumping; ninth, that the plaintiff assumed the risks of the dangers ordinarily incident to his employment; tenth, that the plaintiff failed to exercise ordinary care, and that such failure contributed to produce the injury.

The court, upon motion of defendant's counsel, thereafter set aside the answers of the jury to the second and third questions of the special verdict and ordered judgment in favor of the defendant.

The only question which we find it necessary to consider involves the alleged negligence of the defendant. All of the questions in the special verdict involving liability were answered in defendant's favor excepting only the second and third, and the court ordered the answers to these questions changed; so that in order to sustain the judgment herein it must be held as a matter of law either that proper instructions were given or that instructions were unnecessary. Prior to starting work on the bridge the foreman gave general instructions to the crew, as will be found in the foregoing statement of facts. That these instructions were amply sufficient appears from the fact that the members of the crew, without any hesitation and without further instructions, proceeded to do the work as heretofore outlined, and the plaintiff, without protest and without making any suggestions, proceeded to co-operate with his fellow employees in performing the work in this manner. The

only other method which had theretofore been pursued by defendant's employees in similar work, but on larger and higher bridges, was one where stringers were lowered in part by the use of ropes. No ropes were on hand or used on the work in question, and plaintiff did not even suggest the idea of the necessity of resorting to such process, nor did he intimate that peavies ought to be used to aid in lowering the stringers. Plaintiff testified that the foreman told the crew, after the first stringer had been dumped, that the work would not be done in that way again. This statement was expressly denied by the foreman and other members of the crew. Neither before the second stringer was placed upon the dolly, nor at any time thereafter, did the plaintiff suggest that any other method than the one that had theretofore been used would be resorted to. No inquiry was made about ropes, no ropes were actually used, and it does not even appear from the evidence that any were on hand. No witness testified that the second stringer was to be lowered with the aid of peavies, and there is not even a suggestion in the evidence that either the plaintiff or any of the other employees discussed such method. The dumping of the second stringer was performed precisely in the same manner as the first. Such method was the usual and ordinary method resorted to on a job of this kind, and it would appear, and the evidence shows conclusively, that it was the safest method. Prior to the accident all the members of the crew, including the foreman, were satisfied that the ties had been sufficiently removed and that the opening caused by their removal was large enough so that a stringer could ordinarily be safely dumped so that it would not come in contact with the ties.

The plaintiff was not an ordinary laborer, but a skilled bridge carpenter, with considerable experience in this line of work. There was no existing danger in the method pursued that plaintiff was not as familiar with as any other member of the crew or the foreman. While plaintiff testified that the

foreman made the statement after the first stringer had been dumped that the work would not be done in that manner again, yet it appears conclusively that the entire crew excepting the plaintiff fully understood that no change would be made in the method of the work; and the jury having found in answer to the fourth question of the special verdict that at the time of the injury the employees of the defendant did not fail to exercise ordinary care by failing to give warning that the timber was about to be dumped, such answer of the jury effectively negatives the claim of the plaintiff as to the alleged statement made by the foreman, for it appears quite satisfactorily that in all cases where a heavy stringer is dumped in part either with the aid of ropes or peavies, in order to perform the work properly a prior warning becomes necessary on the part of the dolly man.

The sixth question of the special verdict, while not proper in form, nevertheless establishes an important evidentiary fact, namely, that it was not known or anticipated by the defendant's employees that the plaintiff would go to the west end of the stringer to help guide the same while in the process of dumping. The answer of the jury to such sixth question also conclusively negatives the plaintiff's claim with respect to the alleged statement of the foreman. Furthermore, the evidence does not show that any member of the crew was aware either of the fact that plaintiff was proceeding westward on the ties or that he intended to participate in the lowering of the timber with the aid of a peavy.

"Before an employer can be held liable for a failure to warn, there must be something to suggest to him that a warning is necessary. Unless this necessity was or ought to have been known to him, he is considered to be justified in acting upon the assumption that the servant understood the dangers to which he was exposed, and would take appropriate precautions to safeguard himself. . . . Failure to instruct or warn an employee as to risks and hazards attending the employment is not negligence, unless the employer knew, or ought to have known, that such warning and in-

struction was necessary." *Covelli v. Cooper Underwear Co.* 151 Wis. 130, 135, 138 N. W. 40; *Sladky v. Marinette L. Co.* 107 Wis. 250, 83 N. W. 514; 1 Labatt, Mast. & Serv. § 241.

It having been found by the jury that it was not known or anticipated by the defendant's employees that the plaintiff might go to the west end of the stringer to help guide the same while in the process of dumping, and also in view of the jury's answer to the fourth question of the special verdict, it follows that no further instructions were necessary. It also follows, as a matter of law, that the accident in question was one which the defendant, in the exercise of ordinary care, could not reasonably anticipate.

We therefore come to the irresistible conclusion (1) that the method pursued was the usual and ordinary method and one which was safest from the standpoint of the crew; (2) that all dangers connected with this work were open and obvious, with which the plaintiff was as familiar as any other member of the crew; (3) that under the undisputed facts established by the evidence, and under the verdict of the jury, the plaintiff was not warranted in assuming that a different method would be pursued with respect to the second stringer than was resorted to when the first stringer was dumped; (4) that in the exercise of ordinary care the defendant's employees should not have anticipated that the plaintiff might go to the west end of the stringer to help guide the same while in the process of dumping.

The defendant, therefore, as a matter of law, was guilty of no negligence, and the circuit court was right in ordering judgment for the defendant.

*By the Court.*—Judgment affirmed.